WILLIAM T. PEASE (IMPLEADED WITH JOHN CHESTER AND TARLETON JONES), PLAINTIFF IN ERROR, *v.* WILLIAM DWIGHT.

Where a promissory note was payable to the order of several persons, the name of one of whom was inserted by mistake, or inadvertently left on when the note was indorsed and delivered by the real payees, one of whom was also the maker of the note, the indorsee had a right to recover upon the note, although the names of all the payees were not upon the indorsement, and had a right, also, to prove the facts by evidence.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the District of Michigan.

On the 1st of January, 1837, the following promissory note was executed.

*Detroit, January* 1, 1837.

Two years from date I promise to pay to the order of Walter Chester and Pease, Chester, & Co. one thousand five hundred dollars, for value received, at the Farmers and Mechanics' Bank of Michigan, with interest.

(Signed,) JOHN CHESTER.

Indorsed by Pease, Chester, & Co., but not by Walter Chester.

The firm of Pease, Chester, & Co. was composed of William T. Pease (the plaintiff in error), John Chester, and Tarleton Jones.

The note having passed into the hands of William Dwight, a citizen of Massachusetts, (the defendant in error,) and not being paid at maturity, Dwight brought suit in the Circuit Court against Pease, Chester, and Jones. The course which Pease took will be stated presently. Chester pleaded bankruptcy, which was demurred to, but the demurrer overruled, and the plea sustained. Jones was a citizen of Illinois, and could not be found.

There were several counts in the declaration, but the only one upon which judgment was rendered, and which it is material now to state, was the following : —

" For that whereas one John Chester heretofore, to wit, on the first day of January, in the year of our Lord one thousand eight hundred and thirty-seven, at Detroit, in said district, made his certain promissory note in writing, bearing date the same day and year aforesaid, and thereby then and there promised, two years from the date thereof, to pay to the order of Walter Chester and the said defendants, under the copartnership name and style of these said defendants, Pease, Chester, & Co., one thousand five hundred dollars, for value received, at the Farmers and Mechanics' Bank of Michigan, with interest ; and then and there delivered the said promissory note to the defendants; who then and there, using their copartnership name and style of Pease, Chester, & Co., indorsed said note, and delivered the same to the plaintiff; and the said plaintiff avers, that the said John Chester was one of the said persons using the name and style of Pease, Chester, & Co., and that the name of the said Walter Chester was inserted in the said promissory note as one of the persons to whose order the said sum of money should be payable by the said John Chester, for the purpose of, and with the intention on the part of the said John Chester, of procuring the said Walter to indorse the said note for the accommodation and benefit of the said John Chester, and for no other purpose ; that the said note was never delivered to the said Walter Chester, and that the said Walter Chester never had at any time any interest or property, or any rights therein, or to the money specified and mentioned therein.

" That the said note was by the said John Chester delivered to the said Pease, Chester, & Co. alone, who received the same and indorsed it solely, who waived the indorsement of the said Walter Chester, and having solely indorsed the same, delivered the said note, so indorsed as aforesaid, to the said plaintiff. And the said plaintiff avers, that afterwards, and when the said promissory note became due and payable, according to the tenor and effect thereof, to wit, on the fourth day of Jan-

uary, in the year eighteen hundred and thirty-nine, at the said Farmers and Mechanics' Bank of Michigan, the said note was presented and shown to and at the said bank for payment thereof, and payment thereof requested; but that neither the said John Chester, nor any other person, did or would pay the said sum of money therein specified, but then and there wholly neglected and refused to do so; of all which said several premises the said defendants then and there had due notice."

Pease demurred to this count, and filed the following causes of demurrer :—

" 1st. Because it is not averred in said first count, that Walter Chester, *one of the joint* payees of the said promissory note described in said counts, ever indorsed or delivered the same to the said plaintiff, or any other person whatever.

" 2d. For that said first count is in other respects informal, insufficient, and defective."

Dwight put in a joinder in demurrer.

In November, 1845, the Circuit Court overruled the demurrer, entered up judgment for the plaintiff, and assessed his damages at $ 2,427 and costs. To review this judgment, a writ of error brought the case up to this court.

It was argued by *Mr. Bates*, for the plaintiff in error, Pease, and by *Joy* and *Porter*, with whom was *Mr. Ashmun*, for the defendant in error, Dwight.

The argument on behalf of the plaintiff in error was as follows.

The first count of the declaration sets forth the particular circumstances under which the note was made and indorsed, and the demurrer of course admits them to be true. John Chester, the maker of the note, was one of the firm of Pease, Chester, & Co. ; he made the note with the intention of procuring the indorsement of Walter Chester and Pease, Chester, & Co., as accommodation indorsers for his benefit. Walter Chester declined to indorse the note, and then John Chester indorsed his note with the copartnership name of Pease, Chester, & Co., and delivered it to De Garmo Jones, who delivered it to the plaintiff.

The demurrer which was originally interposed to the first and second counts (the second having been subsequently *nolle pros'd*) sets forth as the ground of demurrer, that the first count does not set forth a right of action in the plaintiff, as there was no indorsement or transfer of the note by Walter Chester, one of the joint payees thereof, and that no right of action can be acquired to a promissory note, made payable to order of joint

payees, without the indorsement by them and each of them; that in no other manner can there be a legal transfer of such a note, or the cause of action thereon. This is the only point involved in the decision of the court below, and which this court is now called upon to revise. The plaintiff claims to recover as the holder of a negotiable note; and such is the instrument declared on in the count under examination. He does not seek to recover on a special contract, but on a note, transferred and delivered by the single indorsement of one of the joint payees. (Does the first count show a right to recover as against the other joint indorsers?) He claims to recover, too, against William T. Pease, one of the firm of Pease, Chester, & Co., who, he states, were mere accommodation indorsers of John Chester. It is quite unnecessary to cite to this tribunal the general rule laid down in all the books:—"If a bill or note be payable to several persons not in partnership, the right to transfer is in all collectively, not in any individually; and an indorsement by and in the name of one only will not give the indorsed a right to sue." (Bayley on Bills, 49.)

Chitty on Bills, page 123, says:—"If a bill has been made or transferred to several persons not in partnership, the right of transfer is in all collectively, and 'not in any individually.'" Carvick v. Vickery, 2 Douglass, 653, p. 134, note; Smith v. Whiting, 9 Mass. Rep. 334; 7 Cowen, 126; 9 Greenleaf, 85. Story, in his volume on Promissory Notes, page 131, section 125, lays down the same rule in the following language:—"If a note be made payable or indorsed to several persons not partners, as to A, B, and C, then the transfer can only be by a 'joint indorsement' of all of them." In Story on Bills, section 197, page 218, the same rule is again laid down in the following language:—"If a bill be made payable or indorsed to several persons not partners, as to A, B, and C, then the transfer can only be by a 'joint indorsement' of all of them."

Such is the rule established by all the elementary writers, and the decisions of the courts of England and this country, on the subject. It is not pretended, nor does the count demurred to set forth, that Walter Chester was a partner of Pease, Chester, & Co. Such was not the fact, and the pleadings show it. Of course this note could only be transferred or assigned to the plaintiff by the indorsement of both Walter Chester and Pease, Chester, & Co., the joint payees thereof.

Let us now examine briefly the only case cited by the attorneys of the plaintiff on the argument of this demurrer in the court below, the only case on which that decision can be sustained, and the court will see, by a glance at the facts, that it

has no real application to the present case, that it contains no exception whatever to the general rule cited from the authors above referred to.

What are the facts of that case, as set forth in 4 Carrington & Payne's Reports, 466, Leaf and others *v.* Gibbs. That was an action brought by the payee of two promissory notes made by the defendant and two ladies, named Gibbs and White, which were given in payment of an account due from Gibbs and White. The defendant signed the notes, with the understanding, at the time of his signature, that his mother should sign them with him, as a joint and several promisor; but she refused to do so. The notes were, so far as we can discover from the report of the case, joint and several notes, to which the defendant had placed his name. On the trial, the plaintiffs and the payee proved that the defendant had placed his name there with the understanding that his mother was to unite as a maker. The defendant was liable on the face of the notes by their tenor as a joint and several maker. He sought to establish as a defence, that, at the time of the making, he agreed to sign with his mother, a fact of course known to the payees; and the court properly charged the jury, that, if they were satisfied from the evidence adduced that he had not waived, by his own conduct, the joint and several signatures of his mother, they must find for him, the defendant. In this case, we insist there is no legal liability of the defendant on the note set forth in the declaration, without the joint indorsement of Walter Chester, which was never obtained. There can be no legal liability, as indorser of the note set forth in this case, without the joint indorsement of all the payees of it. There can be no legal transfer to the plaintiff, or any one else, of the note set forth in the first count, unless it is done by the joint indorsement of Walter Chester and Pease, Chester, & Co. In the case of Leaf and Gibbs, the defendant was liable on the face of the note itself; here the defendant is not; there he set up facts dehors the note, to show that he was discharged; here we rely on the face of the note itself. The two cases are as entirely dissimilar in the facts set forth as they are in the principles of law which govern them. The case cited in no particular sustains the principles contended for by the plaintiff's counsel in the present case.

The argument on behalf of Dwight, the defendant in error, was as follows.

The declaration in this cause is against the defendants as indorsers of a promissory note made by John Chester, payable to the order of Walter Chester and the defendants, and avers

that the note was made by John Chester, payable to the order of Walter Chester and the defendants, with the intention of procuring Walter Chester to indorse the same as an accommodation indorser; that the said note never was delivered to said Walter Chester; that he had no property therein, had no interest in the moneys specified therein, and was in no way whatever interested in the said note; but that the said note was delivered to the said defendants alone, who indorsed and delivered the same to the said plaintiff, and expressly waived the indorsement of the said Walter Chester. The presentment and notice are also alleged in the usual form.

The facts stated by *Mr. Bates* in his brief, as to Mr. Chester's indorsing the copartnership name of the defendants and transferring the note to Jones, and that Walter Chester declined to indorse the note, are not in the declaration, and are not true.

The facts alleged in the declaration are admitted to be true by the demurrer, and are unquestionably true.

The question, then, is, whether, upon the facts alleged and admitted to be true, the plaintiff is entitled to recover; and of this we think there can be no question.

It strikes us that the question is simply this, viz. : —Where a promissory note has been made payable to four individuals, with the intention to procure all to indorse it, and three actually conclude to indorse it without the other, can they strike out the name of the other payee, and whose name was inserted only for the purpose of procuring him to indorse for accommodation ? This is the legal effect of indorsing and delivering the note without his joint indorsement, and an express waiver of his indorsement at the time, which is tantamount to an agreement by the three to become liable without him. The making of a promissory note is not the making of a contract, nor is an indorsement for accommodation a contract; it is the delivery which gives effect to all; it is then that the contract becomes operative. Now, what was the contract at the time of delivery to the plaintiff? Chester had made his note payable to the order of Walter Chester and the defendants, with the intent to procure Walter to indorse solely and only for his accommodation. The defendants, among whom was John Chester, the maker of the note, finding some difficulty in procuring Walter's indorsement, conclude to forego it, he having no interest whatever in the matter, and indorse it themselves without him; the plaintiff agrees to take the note with their indorsement alone. Now up to this time there is surely no contract at all in virtue of the paper; but now it is delivered and accepted, upon the full understanding by all parties that Walter Chester should be

no party to the security, although, in the hurry of a commercial transaction, the pen was not drawn across his name before delivery.

Now, was he ever in any way a party to the note, either as payee or indorser? He had no interest in it which would entitle him to have it delivered to him. It was not delivered to him, or to another for his benefit, which alone would make him a party to it. It is not by delivery, then, that he is a party to it. He did not indorse it, which would have made him a party. In legal effect, therefore, he never did become a party to it; and the transaction, so far as he is concerned, is precisely the same as if his name had never appeared upon the paper, or had been struck out at the time of delivery.

It was delivered to the defendants, which made them parties to it. It was by them indorsed, and with a waiver of the indorsement of Walter Chester. It was accepted with a waiver, What was the contract, then, which took effect?

Let it be remembered that the maker of this note is one of the firm of Pease, Chester, & Co., the indorsers; that it was payable by one of the firm to the order of the copartnership and another person, whose name was to be procured to strengthen the note; that it never passed from the hands of the maker, and therefore never took effect, till the maker, together with his copartners, indorsed and delivered it, and waived the indorsement of the other intended surety.

How can it be pretended that Walter Chester was ever a party in any way to this note? and how can the doctrine of the cases cited on the other side, which say that all parties to a note as payees must indorse it in order to transfer it, apply? It is undoubtedly true, that parties jointly interested in a promissory note as payees, holding property in the note, must join in the indorsement to pass the property in the note. Two cannot transfer the property of three. All this is clear and unquestionable. But here Walter Chester never was in law a party, and never had any property in the note in fact, as admitted by the defendants themselves, in their demurrer.

In this view of the facts, it is similar to the case of a bond, reciting in the body that one person is bound as principal and four others as sureties, evincing an intention, at the time of writing the bond, of procuring four sureties. The bond in fact is signed by only three sureties, and by them is executed and delivered with the knowledge that the other does not execute it, and whose execution of it by the others is waived, but whose name is through inadvertence not struck out of the instrument. This point has been decided. See Duncan *v.* United States, 7 Peters, 443.

It is the same as if the note had read, "We, John Chester as principal, and Walter Chester and Pease, Chester, & Co. as sureties, agree to pay to the order of William Dwight," &c., and the parties had signed it except Walter, and delivered it, waiving his signature and consenting to become bound without him.    There can be no doubt in such a case.    See Leaf et al. v. Gibbs, 4 Car. & Payne, 466; same case, 19 English C. L. R. 475.

In the case before the court, it having been the understanding clearly of all parties, that Walter's signature or indorsement should be waived, it was competent for Dwight to strike his name out of the body of the note, as being no party to it; and in legal effect he is no more a party to the note than if his name had been struck out at the time of delivery. His name has been permitted to remain, though legally there never was any contract with him; and we may recover upon the facts as well as if we had struck out his name, and declared upon the note as payable to Pease, Chester, & Co. alone, which in legal effect was the case.

But we may set out the instrument in the declaration, either as it is written, and let the court say what the legal effect is, or we may set it out according to its legal effect.

This, too, is an action against the men who indorse and deliver the note, and waive the indorsement of the other party. They deliver the note in its present shape as a good contract, and now resist a suit upon the ground that there is no transfer. They do not deny the contract, but say we cannot sue the maker, because Walter Chester has not indorsed. We say they have contracted, and therefore we sue them. They ought to be, if they are not, estopped from denying our right to maintain an action against them.

Mr. Justice WAYNE delivered the opinion of the court.

We think that the only point presented by the record in this case for the decision of the court was rightly ruled by the Circuit Court.

That point is, whether a promissory note payable to the order of several persons, one of whom inceptively refused to be a payee of it, and who was treated by the drawer and other payees, both in the delivery of the note and in its negotiation, as no party and having no interest in it, *can be transferred by the indorsement of the real payees, so as to give the ownership of it to the indorsee, and a right of action upon it ex directo, under the statute of 3 & 4 Anne, c. 9.*

The statute is, that "any person, to whom a promissory note that is payable to any person or his order is indorsed or

assigned, or the money therein mentioned ordered to be paid by indorsement thereon, shall and may maintain an action for such sum of money, either against the person signing such note, or against any of the persons who indorsed the same, in like manner as in cases of inland bills of exchange."

The statute requires a transfer to be made by the indorsement of the person to whom the note is payable, and the interpretation of it is, that, where a note is payable to the order of several persons not in partnership, all must separately sign their names as indorsers. The object being, that, before an indorsee shall recover the contents of the note in his own name, he shall show he has acquired a property in it, by a transfer from those who were the original payees, or from others who were their indorsers. The statute is not merely a form, requiring all the payees to indorse, but a substantial requisition, *upon the presumption that all the payees upon the face of the paper have an interest in it, and that they have indorsed it.* We have, then, the rule, and the reason of the rule. And it seems to us, that to permit it to comprehend a case of an undertaking between the real parties, because a name had been mistakenly inserted, or had been inadvertently left upon the face of the paper, when the note was delivered to the real payees by the drawee, would be to wrest the statute out of its meaning, and to sacrifice the substantial intention of it merely to form. The statute meant to deal with real parties. The omission to erase the name in such a case does not lessen the drawer's obligation to pay his note to the real payees, or their right of action upon it against the drawer as a note of hand. If, then, the real payees shall indorse the note to a third person, they are within the words of the statute as indorsers, and the indorsee, in an action against them or the drawer, may be permitted to prove the real character of the undertaking, by showing that the name of a person had been inadvertently left upon the paper as a payee, who had refused to be such, and who had been waived as a party to the note, both by the drawer and the real payees, when the contract had been completed between them by the delivery of the note. In the case before us, the declaration recites the particular circumstances under which the note was made and indorsed. The demurrer admits them. That is, that the paper had been indorsed by the real payees of it, but not by the nominal payee, who never was an actual payee nor ever had any interest in the note by being in any way a party to it. It would really be going very far to say, that the statute giving the indorsee a right of action *for such sum of money, either against the person signing such note or against any of the persons who indorsed* the same, did not

mean it to be exercised because a person's name was upon the face of the paper who never had been a party to it. No such decision. has been made. It may be because no case of this kind has ever occurred before. We can find none like it. In the absence of all authority against our conclusion, we must take upon ourselves the responsibility of announcing it as an original application of the statute to this case, and for any case of a like kind which may occur, without intending it to go further. We think, however, that the interpretation is sustained by what has been the practice under the statute in some other particulars, — that it is within the spirit of the principle upon which the statute has been administered. For instance, the statute requires the indorsement of a note to be made by the person to whom. it is payable, and one of several partners may indorse in the partnership name ; but though a note be made payable to a partnership, a transfer in the name of one partner alone will pass the partnership interest, if it be proved that it has been the practice of the firm to indorse for them, in the name of one only. South Carolina Bank *v.* Case, 8 Barn. & Cres. 436. So if one partner. transfer in the name formerly used by the partnership. Williamson *v.* Johnson, 1 Barn. & Cres. 146 ; 2 D. & R. 281.

Also, where. a bill is drawn upon a firm, and one partner writes "Accepted," adding only his own name, it will bind the firm, if they were in partnership at the time of the acceptance. An indorsement by the cashier of a bank of a note payable directly to the bank is good, upon the ground that he represents the interest of the bank in it, though he is not officially or otherwise a payee upon the face of the note. In Goddard *v.* Lyman, 14 Pick. 268, it is said, a negotiable note payable to three persons. may be legally transferred by indorsement by two of them to the third payee and a stranger, and, if this were doubtful, the indorsement of the third payee to the stranger will clearly pass the property to him. In Snelling *v.* Boyd, 5 Monroe, 173, it is said, one of several joint holders of a bill of exchange may transfer the whole interest in it by indorsement. Where the maker of a promissory note indorsed the same, for his own benefit, in the payee's name, by virtue of a parol authority for that purpose communicated to him by the payee, it was held to be well indorsed, and that the payee was liable upon such indorsement in the same manner as if it had been made by himself in his own hand. Turnbull *v.* Trout, 1 Hall, 336. The foregoing, it will be perceived, are all of them cases in which parol proof has been admitted to show the character of the agencies by which notes or bills have been transferred or accepted, without any one of

the notes having been indorsed within the exact letter of the statute, though all of them are within its spirit.

But we rely altogether in this case upon the fact, that the note was transferred by the indorsement of those who were its real payees, — by those who had the absolute property in it. We think the true meaning of the statute is, that such as have the property in the note have the right to indorse, though there shall be a name upon the paper of another person, which was inserted by mistake as a payee, or inadvertently left in when the note was delivered, and that in an action by the indorsee he should be permitted to prove such a fact. Upon this point of the right of those to indorse who have the absolute property in a bill or note, we will cite what was said by the learned Chief Justice Willes in the conclusion of his opinion in the case of Stone *v.* Rawlinson, Willes, 562 : — " On the strength of this case I think I may make a syllogism, which will be conclusive in the present case. Whoever has the absolute property in a bill, made payable to one or his order, may assign it as he pleases, within the provision of the statute, and such assignee may maintain an action in his own name ; the executor or administrator of a person to whom such bill is made payable has the absolute property in it, and therefore he may assign it to whomsoever he pleases, and such assignee may maintain an action in his own name." This was said in answer to an objection, that an executor or administrator cannot assign a promissory note made payable to a person or order, so as to enable the indorsee to bring an action in his own name. So, a bill or note made payable or indorsed to a feme sole, who afterwards marries, or where it is made during the coverture, the right of transfer vests in the husband, so as to give his indorsee a right of action upon it in his own name, and the husband may be sued as an indorser. Neither the case of the executor nor that of the husband is within the letter of the statute, but both are according to the spirit and intention of it, to permit indorsements to be made by those who have a property in promissory notes, so as to enable their indorsee to maintain an action in his own name.

The judgment of the Circuit Court is affirmed.

## *Order.*

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Michigan, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be and the same is hereby affirmed, with costs and damages at the rate of six per centum per annum.