THE FARMERS' LOAN AND TRUST COMPANY, PETITIONER.

ORIGINAL.

No. 4. Original. Argued December 17, 18, 1888. — Decided January 21, 1889.

An order of a Circuit Court of the United States, in a suit in equity for the foreclosure of a mortgage upon the property of a railroad company, that the receiver of the mortgaged property may borrow money and issue certificates therefor to be a first lien upon it, made after final decree of foreclosure, and after appeal therefrom to this court, and after the filing of a supersedeas bond, establishes, if unreversed, the right of the holders of the certificates to priority of payment over the mortgage bondholders, and is a final decree from which an appeal may be taken to this court.

THIS was a petition for a writ of mandamus. The motion for leave to file the petition was presented October 22, 1888,

and was granted that day and a rule to show cause issued, returnable on the 3d Monday of the next November. The return was filed on the 26th of November, and argument was had on the 17th and 18th December. The case is stated as follows by the court in its opinion.

At the request of the Farmers' Loan and Trust Company, a rule was granted, in the early part of the present term of this court, on the judges of the Circuit Court of the United States for the Northern District of Texas, to show cause why a mandamus should not issue requiring them to allow an appeal, and to approve a bond upon such appeal, from an order of that court made in the case of that company against the Texas Central Railway Company.

The litigation to which this matter relates was commenced in that court by a bill filed by Morgan's Louisiana and Texas Railroad and Steamship Company, against the Texas Central Railway Company, for the appointment of a receiver and for the sale of the property of the railway company, to enforce an alleged lien. The Farmers' Loan and Trust Company afterwards became a party also, and set up, by cross-bill and otherwise, a mortgage against the railway company prior to the lien of the Morgan company. Receivers were appointed in the progress of that suit, and a final decree rendered by the court in 1887, ordering a sale of the property and recognizing the paramount lien of the Trust Company to the extent of four millions of dollars and over, and holding that the claim of the original complainant was subordinate to that. Appeals were taken accompanied by supersedeas, from the decree of foreclosure, both by the original complainant, the Morgan company, and the railway company, which appeals are now pending in this court on the docket.

A motion was filed here at the last term to advance the cause, but it was denied. On February 15, 1888, and after said decree of foreclosure and sale was made, and after the appeal in the case from that decree was taken to this court, and a supersedeas bond filed, the receivers of the railway company presented their petition to the Circuit Court for an order

authorizing them to borrow the sum of $120,000 on certificates, the same to be a first lien on the property. The making of this order was opposed by the Trust Company. The matter was referred to a master to report, and on the coming in of his report, which was in favor of the petition of the receivers, their request was granted, and an order was made authorizing them to expend that sum on the railway, and to borrow money for this purpose, for which they were to issue certificates that should be a first lien on the entire property of the railway company, except as to $20,000 of certificates which had already been issued under another order.

· The Trust Company, believing that this order would work a great injustice to the bondholders whom they represented, and who had the first lien on the property of the railway company, applied successively to the circuit judge and the circuit justice for the allowance of an appeal, and the approval of a bond to operate as a supersedeas, which they offered, and the sufficiency of which has not been controverted.

After argument on the subject before both of these judges, they declined to either allow the appeal or approve the bond. Application was then made to this court for a rule upon them to show cause why this appeal should not be allowed and the bond approved. The rule was granted, and the return thereto made by the circuit judge is now before us, giving the reasons why he does not think the appeal should be allowed. The question now before us is on the sufficiency of this return.

*Mr. Herbert B. Turner* for the petitioner.

*Mr. J. Hubley Ashton* opposing.

I. The burden is upon the petitioner to show that it has a clear right to an appeal which has been refused by the Circuit Court.

(1) Power to issue writs of mandamus to the courts appointed under the authority of the United States is conferred upon this court by the 13th section of the Judiciary Act, now § 688 of the Revised Statutes, "in cases warranted by the

principles and usages of law." *Ex parte Cutting*, 94 U. S. 14, 19.

(2) The writ will not be granted in favor of a party, asking the allowance of an appeal, unless he shows that he took the steps necessary to entitle him to an appeal, and that the amount in dispute is sufficient to give this court jurisdiction. *Mussina* v. *Cavazos*, 20 How. 280; *Ex parte Baltimore & Ohio Railroad*, 106 U. S. 5; *In re Burdett*, 127 U. S. 771.

II. The petitioner is not entitled to a mandamus, in this case, unless the order of May 26, 1888, standing alone, as it does, is a final decree, in the suit, within the meaning of § 692 of the Revised Statutes, by which the rights of the petitioner are injuriously affected, and it appears that the amount in dispute exceeds the sum or value of five thousand dollars, exclusive of costs.

(1) Congress intended that a case should not be divided up into a plurality of appeals. *The Palmyra*, 10 Wheat. 502; *Forgay* v. *Conrad*, 6 How. 201; *Beebe* v. *Russell*, 19 How. 283; *Humiston* v. *Stainthorp*, 2 Wall. 106. Interlocutory orders, made in the progress of a suit, can come here only through, and upon, an appeal from a final decree. *Railroad Co.* v. *Soutter*, 2 Wall. 510, 521; *Ex parte Jordan*, 94 U. S. 248. Where a matter distinct from the general subject of litigation arises in the progress of a suit in equity, the jurisdiction of this court can be invoked only after a final decision and settlement of the right or claim involved, and the proceedings in relation thereto are ended. Thus, a purchaser at a foreclosure sale may appeal from a decree affecting his interest, but only after the proceedings for the sale, under the original decree, are ended, and from the last decree which the court can make in the case, and which dismisses the parties from further attendance upon the court for any purpose connected with the action. *Blossom* v. *Milwaukee &c. Railroad Co.*, 1 Wall. 655. See also *Butterfield* v. *Usher*, 91 U. S. 246; *Trustees* v. *Greenough*, 105 U. S. 527, 531; *Williams* v. *Morgan*, 111 U. S. 684; *Ex parte Jordan*, 94 U. S. 248, 251; *Wallace* v. *Loomis*, 97 U. S. 146; *Miltenberger* v. *Logansport Railway Co.*, 106

U. S. 286; *Union Trust Co.* v. *Illinois Midland Railway,* 117 U. S. 434; *Chicago & Vincennes Railroad* v. *Fosdick,* 106 U. S. 47, 84.

(2) The limitation of the right of appeal to cases where the matter in dispute exceeds the sum or value of $5000, " draws the boundary line of *jurisdiction,* and is to be con-strued with strictness and rigor." *Elgin* v. *Marshall,* 106 U. S. 578; *Farmers' Loan and Trust Co.* v. *Waterman,* 106 U. S. 265.

III. It doth not appear that the order of May 26th, 1888, affects, or will affect, the rights or interests of the petitioner, or those whom, in equity, it represents, to an amount sufficient to give this court jurisdiction, or to any amount, and no appeal therefrom is, therefore, allowable.

(1) The order is an administrative order for the preservation of the property as a trust fund for those entitled to it, and the maintenance of the railroad, and its structures, in a safe and proper condition to serve the public. *Wallace* v. *Loomis,* 97 U. S. 146; *Union Trust Co.* v. *Illinois Midland Co.,* 117 U. S. 434, 456.°

(2) If receivers' certificates had been issued, under the order in controversy, it would be impossible, we suppose, to tell. whether the mortgage creditors would be injuriously affected, and, if so, to what sum or amount, by reason of the order, and the action of the receivers under it, until the fund for distribu-tion should be ascertained, the amount of the claims of the respective holders of such certificates to priority of lien upon the fund determined, and the results of a final decree of distri-bution known.

IV. The order of May 26th, 1888, as it stands is an admin-istrative order, relating to a matter within the domain of the discretion of the Circuit Court, with which this court will not interfere, and it is not, therefore, the subject of an appeal to this court.

(1) The question presented is as to the legal nature and character of the order, standing *alone,* as it does, and before and without confirmation by any adjudication of the Circuit Court, recognizing loans made under it, and giving them

priority of lien in the distribution of the trust funds. That the order, in its present situation and relation, is to be deemed an administrative order, not involving the exercise of what this court has called "*judicial judgment*," and not impugnable for what has been termed "*judicial error*," appears to follow from the juridical character of the protective powers of courts of Chancery in the case of trust funds, the nature and objects of such orders, as well as from what this court has said, on several occasions, touching the power of courts of Equity, by such orders, to preserve such property when in its hands as a trust fund.

The protective and administrative functions of courts of Chancery are as old as those courts themselves. 1 Spence's Equitable Jurisdiction of the Court of Chancery, 377 – 381; additional note to chapter 6. This order relates only to the business which the court is obliged to carry on, through its officers, in the performance of its duty to take care of an manage the property pending the litigation. The property is not brought into the Appellate Court by the appeal, and the Circuit Court must still use its powers to preserve it. *Bronson* v. *La Crosse Railroad*, 1 Wall. 405. In a foreclosure suit, until the litigation is ended, it does not appear that there must be a sale. *Kountze* v. *Omaha Hotel Co.*, 107 U. S. 378, 393; and meanwhile the court must keep the road in safe condition. *Union Trust Co.* v. *Illinois Midland Co.*, *ubi supra*. See also *Wallace* v. *Loomis*, *ubi supra*.

(2) But when the order has been executed, and claims arising under the receivers' certificates are presented for allowance against the property, with priority of lien over the mortgage bonds, the adjudication of the court upon the respective priorities is a judicial decree, and when final, a final decree, the lawful subject of appeal when a sufficient amount is involved. *Forgay* v. *Conrad*, 6 How. 200.

V. The order of May 26th, 1888, is not final in the sense of that word in its relation to appeals, and is strictly an interlocutory order in the cause, and not a final decree therein, from which an appeal lies to this court.

No decree can amount to a "final" decree upon which an

appeal lies to this court, unless it is a final judicial determina-
tion of the merits of the case, or of the matter embraced by
the decree, terminating the litigation between the parties, and
leaving nothing to be done but to carry what has been decreed
into execution. This is the principle of the earlier, as well as
the late, decisions of this court upon the subject. *Humiston*
v. *Stainthorp*, 2 Wall. 106, and cases there cited; *Barnard* v.
*Gibson*, 7 How. 650; *Railroad Co.* v. *Swasey*, 23 Wall. 405;
*Butterfield* v. *Usher*, 91 U. S. 246; *Blossom* v. *Milwaukee &c.
Railroad Co.*, 1 Wall. 655; *S. C.* 3 Wall. 196; *Grant* v. *Phœnix
Ins. Co.*, 106 U. S. 429; *Bostwick* v. *Brinkerhoff*, 106 U. S. 3;
*Green* v. *Fisk*, 103 U. S. 518; *Parsons* v. *Robinson*, 122 U. S.
112; *Burlington &c. Railway Co.* v. *Simmons*, 123 U. S. 52.

Where the trustee of the bondholders, in a foreclosure suit,
consents to or acquiesces in an order of the court making the
receivers' certificates a first lien on the property, the bond-
holders may not be able afterwards to deny the power of the
court to act in making the order, so far as the interests of
third parties acting on the faith of the order might be affected.
*Wallace* v. *Loomis, ubi supra; Union Trust Co.* v. *Ill. Mid-
land Co., ubi supra; Humphreys* v. *Allen*, 101 Illinois, 490,
500.

But where the mortgage trustee has not consented to the
order, and has formally denied, as in this case, the power of
the court to act in making it, we apprehend, the bondholders
are not precluded from afterwards contesting the validity and
effect of the receivers' certificates as a charge upon the prop-
erty, superior to the lien created by the first mortgages, and
the court must adjudicate those questions, when presented for
determination, before making its final decree of distribution.

It is well settled that receivers' certificates are not negoti-
able instruments, and that purchasers of such securities are
bound to take notice of the orders under which they were
issued, and the records of the court with regard to them,
which are always accessible to lenders and subsequent holders.
*Stanton* v. *Alabama & Chattanooga Railroad Co.*, 2 Woods,
506, 512; approved, *Union Trust Co.* v. *Ill. Midland Co.*, 117
U. S. 456, 461; *Swann* v. *Wright's Executor*, 110 U. S. 590,

599; *Turner* v. *Peoria & Springfield Railroad Co.*, 95 Illinois, 134; Beach on Receivers, § 396 *et seq.*

VI. It would appear to be settled by adjudication and practice that an order, in a foreclosure suit, for the issuing of receivers' certificates, the same to be a first lien on the property, is an interlocutory order, which can be brought here only by an appeal from a final decree of distribution. *Ex parte Jordan, ubi supra; Union Trust Co.* v. *Illinois Midland Railway Co., ubi supra.*

MR. JUSTICE MILLER delivered the opinion of the court.

The reasons why the judges declined to allow this appeal may be substantially divided into two. The first and most important of these is, that the order from which the appeal is asked is not a final decree, within the meaning of the act of Congress on that subject, but is a mere ancillary proceeding for the protection of the property pending an appeal from the principal decree now before this court. But the doctrine that, after a decree which disposes of a principal subject of litigation and settles the rights of the parties in regard to that matter, there may subsequently arise important matters requiring the judicial action of the court in relation to the same property and some of the same rights litigated in the main suit, making necessary substantive and important orders and decrees in which the most material rights of the parties may be passed upon by the court, and which, when they partake of the nature of final decisions of those rights, may be appealed from, is well established by the decisions of this court. *Blossom* v. *Milwaukee &c. Railroad Co.*, 1 Wall. 655; *Forgay* v. *Conrad*, 6 How. 201; *Fosdick* v. *Schall*, 99 U. S. 235; *Williams* v. *Morgan*, 111 U. S. 684; *Burnham* v. *Bowen*, 111 U. S. 776.

The question in such cases is not whether the order complained of is of a character decisive of questions that the parties are entitled to have reviewed in the appellate court, but whether the order or decree is of that final nature which alone can be brought to this court on appeal. It is upon this ground mainly that the right of appeal is resisted in the pres-

ent case; but we are of opinion that, within the true principles which establish the finality of a decree of the Circuit Court in reference to the allowance of an appeal, this order is a final decree.

If the order is executed, the first thing to be done under it will be to borrow money to the extent authorized therein, and then the receivers will issue the certificates contemplated in it. It is not necessary to hold here what the position of the holders of such certificates would be, if the order contained no provision that they should be the first lien upon the property of the company. It might be, but it is not necessary to decide that question here, that such an order would not be conclusive of the right of the holders of such certificates to priority of payment out of the proceeds of the sale of the railway. It is one of the arguments used before us, that upon a final sale, and an order by the court for the distribution of its proceeds, such certificates would not necessarily be held to have such priority; but that, issued under this order, and containing on their face the provision authorized by it, they would constitute a first lien upon the property of the railway company to be sold under the final decree, is, we think, very clear. Such order standing unrepealed, we do not think that the court in a subsequent stage of the same litigation, in the same case and in regard to the same subject matter, could be permitted to say that the holders of these certificates must establish their right to priority of payment; but we are of opinion that such holders, under the decree of this court that they should have priority standing unreversed, would be entitled to such first lien.

These views we do not propose to elaborate, further than to say that if this order does not give the lender of the money such prior lien upon the proceeds of the property of the company it is because the court had no authority to make it, and as it would be a fraud upon such lender justice could only be done by enforcing it. If this view of the subject be correct, of which we entertain no doubt, the order is a final one. It is a decree fixing upon the property, on which the trust company now has a first lien, another lien of $120,000, and making

it paramount to that. It changes the relation of that company to this property, displaces its rights as settled by a decree now pending in this court, and if that decree is affirmed, it in effect modifies it, although this court may say that it should stand and be enforced. This order comes within all the elements of finality which we can imagine to belong to a decree of the Circuit Court. It establishes certain rights of the parties, to the injury, as petitioners believe, of their interests in the property.

We need not refer to cases on the subject of finality, for they are numerous, and the principles on which they have been decided apply to widely varying circumstances. But while we are not aware of any case precisely in point to the one before us, we are satisfied that it is within the purpose of the statute and the principles by which it is to be construed.

The other reason given why the appeal should not be granted is that the action of the Circuit Court in the case is one within its discretion. All we have to say upon this subject is, that if it be an authority vested in the judges of the Circuit Court, it must be exercised and governed by the principles of a judicial discretion, and the very point to be decided upon an appeal here is, whether they had such discretion, and whether they exercised it in a manner that cannot be reviewed in this court.

The question is one which in its nature must be a subject of appeal. Whether the court below can exercise any such power at all, after the case has been removed from its jurisdiction into this court by an appeal accompanied by a supersedeas, is itself a proper matter of review; and still more, whether, in the exercise of what the court asserts to be its discretionary power, it has invaded established rights of the petitioners in this case, contrary to law, in such a manner that they can have no relief except by an appeal to this court. This is a matter eminently proper to be inquired into upon an appeal from such an order. Upon the hearing of that appeal this court may be of opinion that the order was one proper to be made, in which case it will be affirmed. If, however, it believes that it was an improper one, and will seriously prejudice the rights of the petitioners, it will be reversed and set aside,

as it should be.   In granting the appeal this court, of course, does not undertake to decide whether the order was rightfully made, if the court had the requisite power, but can only do that upon the hearing of the appeal. .

For the same reasons this court cannot consider, on this motion, the urgent appeals made to it in regard to the necessity of this order for the preservation of the railway from destruction during the pendency of the appeal on the main case.   That is a matter only fit to be considered on the hearing of the appeal, which we think should be granted.

> *The writ of mandamus, directing the judges of the Circuit Court to allow the appeal and to approve a sufficient bond, is granted.*

Mr. Justice Bradley said : I concur in the judgment of the court, but for a different reason from that given in the opinion. I think that after appeal from a final decree in a foreclosure suit, and after the case comes here, a supersedeas bond having been given, the control of the fund in dispute belongs to this court, subject to the management of the property by the court below.   In such management that court is the agent of this court, and all its acts in that respect are subject to review and supervision here when properly brought before us.   In the present case the order complained of being final in the matter. to which it relates, and being made since the final decree in the cause, and not reviewable on the appeal from that decree, it may be as well reviewed here by appeal as in any other way.   For that reason I concur in the decision made by the court.