**RUBERT HERMANOS, Inc., et al. v. PEOPLE OF PUERTO RICO.**

No. 3631.

Circuit Court of Appeals, First Circuit.

March 31, 1941.

Henri Brown, of San Juan, P. R. (Jaime Sifre, Jr., San Juan, P. R., on the brief; Arthur J. O'Leary, of New York City, of counsel), for appellant.

William Cattron Rigby, of Washington, D. C. (George A. Malcolm, of San Juan, P. R., and Nathan R. Margold, of Washington, D. C., on the brief), for appellee.

David A. Buckley, Jr., of New York City, amicus curiae.

Before MAGRUDER and MAHONEY, Circuit Judges, and HARTIGAN, District Judge.

MAGRUDER, Circuit Judge.

Complaining now of an order by the Supreme Court of Puerto Rico appointing a receiver, Rubert Hermanos, Inc., brings this case here a second time. Joined as appellants are five individuals as trustees in liquidation of the corporation. A brief résumé of the earlier phase of the litigation will help toward an understanding of the issues raised in the present appeal:

By Joint Resolution of May 1, 1900, 31 Stat. 715, Congress enacted that every agricultural corporation thereafter organized in Puerto Rico "shall by its charter be restricted to the ownership and control of not to exceed five hundred acres of land." This provision was continued in effect by the revised Organic Act, 39 Stat. 951, 965, 48 U.S.C.A. § 752.

Rubert Hermanos, Inc., was organized under the laws of Puerto Rico in 1927, with articles of incorporation expressly containing the aforesaid restriction as to acreage. Notwithstanding the restriction, the corporation proceeded to acquire upwards of 12,000 acres of farming land in Puerto Rico.

In 1935 the Legislature of Puerto Rico passed Acts No. 33 and No. 47[1] to imple-

---

[1] Act No. 33 of July 22, 1935, Laws of Puerto Rico, Special Session, 1935, p. 418, providing:

"Section 1.—There is hereby conferred upon the Supreme Court of Puerto Rico exclusive original jurisdiction to take cognizance of all Quo Warranto proceedings that the Government of Puerto Rico may hereafter institute for violations of the provisions of Section 752, Title 48, United States Code, and for that purpose it is provided that the violation of said provisions shall constitute sufficient cause to institute a proceeding of the nature of Quo Warranto.

"Section 2.—All laws or parts of laws in conflict herewith are hereby repealed.

"Section 3.—This Act, being of an urgent character, shall take effect immediately after its approval."

Act No. 47 of August 7, 1935, Laws of Puerto Rico, Special Session, 1935, p. 530, providing:

"Section 1.—Section 2 of An Act entitled 'An Act establishing Quo Warranto proceedings', approved March 1, 1902, is hereby amended as follows:

" 'Section 2.—In case any person should usurp, or unlawfully hold or execute any public office or should unlawfully make use of any franchise, or likewise shall hold any office in any corporation created by and existing under the laws of Puerto Rico, or any public officer shall have done or suffered any act which, by the provisions of the law, involves a forfeiture of his office, or any association or number of persons shall act within Puerto Rico as a corporation, without being legally incorporated, or any cor-

poration does or omits any act which amounts to a surrender or forfeiture of its rights and privileges as a corporation, or exercises rights not conferred by law, the Attorney General, or any prosecuting attorney of the respective district court, either on his own initiative or at the instance of another person, may file before any district court of Puerto Rico a petition for an information in the nature of Quo Warranto in the name of The People of Puerto Rico; or whenever any corporation, by itself or through any other subsidiary or affiliated entity or agent, exercises rights, performs acts, or makes contracts in violation of the express provisions of the Organic Act of Puerto Rico or of any of its statutes, the Attorney General or any district attorney, either on his own initiative or at the instance of another person, may file before the Supreme Court of Puerto Rico a petition for an information in the nature of Quo Warranto in the name of The People of Puerto Rico; and if from the allegations such court shall be satisfied that there is probable ground for the proceeding, the court may grant the petition and order the information accordingly. Where it appears to the court that the several rights of divers parties to the same office or franchise may properly be determined on the same proceeding, the court may give leave to join all such persons in the same petition, in order to try their respective rights to such office or franchise.'

" 'When any corporation by itself or through any other subsidiary or affiliated entity or agent is unlawfully holding, un-

ment and add sanctions to the Congressional prohibition. The Supreme Court of Puerto Rico was by these acts vested with original jurisdiction of all quo warranto proceedings which might thereafter be instituted by the Government of Puerto Rico for violation of the 500-acre restriction.

Several months after the passage of the latter of these two acts, and pursuant thereto, the People of Puerto Rico commenced quo warranto proceedings in the Supreme Court of Puerto Rico against Rubert Hermanos, Inc., praying the court to adjudge the corporate franchise to have been forfeited, to decree immediate dissolution of the corporation,. to impose a proper fine, and for other relief.

On July 30, 1938, the court gave judgment pronouncing that the defendant corporation was guilty of a violation of the aforesaid provision of the Joint Resolution and of its own articles of incorporation, and imposing a fine of $3,000. In addition, the judgment read: "The forfeiture and cancellation of the license of the defendant corporation and of its articles of incorporation is hereby ordered and decreed, as well as the immediate dissolution and winding up of the affairs of said corporation."

. This judgment was reversed by us in Rubert Hermanos, Inc., v. People of Puerto Rico, 1 Cir., 106 F.2d 754. In turn, we were reversed on certiorari, Puerto Rico v. Rubert Hermanos, Inc., 309 U.S. 543, 60 S.Ct. 699, 84 L.Ed. 916, and the case was remanded to the Supreme Court of Puerto Rico for further proceedings not inconsistent with the opinion of the federal Supreme Court.

Mr. Justice Frankfurter, speaking for the court, said that "On the only questions now before us, we think the Supreme Court of Puerto Rico acted within the scope of power validly conferred upon it by the Legislative Assembly." 309 U.S. at page 550, 60 S.Ct. at page 703, 84 L.Ed. 916. But as the case was presented on that earlier appeal it is clear that the court did not have before it and did not intend to pass on the validity of so much of Act No. 47 as authorizes the People of Puerto Rico at its option, in the same quo warranto proceedings, to move for the confiscation [2] of unlawfully held farming land, or in the alternative, to move for the sale of such land at public auction. Nor was any question presented as to the procedure by which the People of Puerto Rico might exercise this option, assuming its validity. These questions would only arise if the People should elect to proceed with a confiscation or a public sale; but no such election had been made when the case came up before. In all three courts, Rubert Hermanos, Inc., sought to challenge. the provision in Act No. 47 for confiscation or public sale as being an ex post facto penalty invalid un-

der any title, real estate in Puerto Rico, The People of Puerto Rico may, at its option, through the same proceedings, institute in its behalf the confiscation of such property, or the alienation thereof at public auction, within a term of not more than six months counting from the date on which final sentence is rendered.

" 'In every case, alienation or confiscation shall be through the corresponding indemnity as established in the law of eminent domain.'

"Section 2.—Section 6 of an Act entitled 'An Act establishing Quo Warranto proceedings,' approved March 1, 1902, is hereby amended as follows:

" '* * * *

" 'Whenever, in the opinion of the court, it is satisfactorily established that the corporation or corporations have performed acts or exercised rights not conferred by law, or in violation of the express provisions thereof, the judgment entered shall, in case the defendant is a domestic corporation, decree the dissolution thereof and the prohibition to continue doing business in the country; and

in the case of a foreign corporation, the nullity. of all acts done and contracts made by the defendant corporation or entity; and in addition, said judgment shall decree the cancellation of every entry or registration made by the said corporations in the public registries of Puerto Rico; and when the decree of nullity affects real property and The People of Puerto Rico has chosen to confiscate it or orders it sold at public auction, the final judgment shall fix the reasonable price to be paid for said property. For these purposes, the just value of the property subject to alienation or confiscation shall be fixed in the same manner as it is fixed in cases of condemnation proceedings.

" '* * * * ' "

[2] The word "confiscation" has an unduly harsh connotation in this connection, because it is apparent from the statute that under this alternative the land is condemned by the People upon the payment of just compensation as provided in the Condemnation Proceedings Act.

der the Organic Act, 48 U.S.C.A. § 737. Counsel for the insular government persuaded the courts not to pass on this issue by pointing out, correctly enough, that the People had not asked for confiscation or public sale. Obviously this did not estop the People from subsequently moving .for a confiscation or public sale, in accordance with the procedure prescribed in Act No. 47. Appellee has not taken inconsistent positions. The contention of appellants to the contrary is without foundation.

On May 13, 1940, the day on which the mandate of the United States Supreme Court was received by the clerk of the Supreme Court of Puerto Rico, appellee renewed a motion for the appointment of a receiver. This motion had originally been made on July 30, 1938, just after the judgment of dissolution was entered, but the Supreme Court of Puerto Rico held it in abeyance pending the outcome of an appeal from such judgment. The only ground for appointment of a receiver avowed in the motion was that "Such dissolution and disposition of the property of the respondent shall be entrusted to a receiver."

The motion was opposed by the corporation on various grounds, the first being that "The judgment of the court has been complied with. The corporation has been dissolved, its obligations have been extinguished and it has disposed of its properties by unanimous agreement of its stockholders and of the liquidators appearing herein." It seems that this had been accomplished two or three days after the decision in Puerto Rico v. Rubert Hermanos, Inc., 309 U.S. 543, 60 S.Ct. 699, 84 L.Ed. 916, was announced, March 25, 1940, by the simple expedient of transferring the properties of the corporation to a partnership composed of. those who were its only stockholders.

By the order now appealed from, issued July 26, 1940, the court appointed a receiver. Authority for such appointment was found by the court to be impliedly conferred by Act No. 47 on two grounds: First, it is said, authority to decree the dissolution and winding up of the corporation necessarily presupposes power in the court to enforce compliance with its commands; appointment of a receiver is an appropriate way for the court to supervise the liquidation. Second, it is said, a receivership is necessary to preserve the status quo, pending decision by the People of Puerto Rico whether to exercise their option to confiscate the excess lands or have them sold at public auction. The court also found authority to appoint a receiver in § 182, paragraph 4, of the Code of Civil Procedure.

Though the insular government asked for a receivership to liquidate the dissolved corporation, the order does not direct the receiver to proceed with the liquidation but on the contrary contemplates the full operation of the business for an indefinite period. The receiver is directed to take possession not only of the land illegally held but also of all the other property of the corporation, movable and immovable, of every kind and description. He is to continue managing said properties and cultivating the lands, until further order of court, doing all that may be necessary to maintain and preserve the business established by the defendant corporation. Specifically, he is authorized to employ, compensate and dismiss workmen, servants, agents and attorneys; to purchase and pay for materials and accessories needed; to settle with creditors all claims in the ordinary course of business; to pay taxes; to initiate and defend all actions in behalf of or against the corporation; to institute all legal proceedings necessary for the purpose of obtaining possession and control of any property of the corporation; to "give all security which might be necessary to secure loans of funds in interest of the trust confided to said receiver by these presents." All moneys coming into the hands of said receiver as such are to be deposited in his name in one or more banks with the approval of the court, against which deposits the receiver shall have the right to draw by his personal order or by order of his agents. It is further provided that should the People of Puerto Rico request, in accordance with Act No. 47, the sale at public auction of the said properties, the receiver is authorized to proceed "in accordance with the plan which shall be submitted to the previous approval of this court or of the judge acting in the name of this court during its vacation, to sell said properties at public auction." In addition, it is ordered that the defendant, its directors, officers and agents, and all those persons, partnerships or corporations claiming any right by reason of the assignment or transfer made by the defendant corporation subsequent to the date on which the judgment of dissolution was en-

tered, shall "refrain from disposing of conveying or selling in any manner movable or immovable property of which they might be in possession or which they may have under their control, and from interfering with or obstructing the receiver or impeding him in any form from taking possession of the said properties of said corporation."

Appellee moves to dismiss this appeal on the ground that the order appointing the receiver is interlocutory merely. Interlocutory orders appointing receivers have been appealable from the United States District Courts to the Circuit Courts of Appeals for many years. 31 Stat. 660, 28 U.S.C.A. § 227. But under 28 U.S.C.A. § 225, only "final decisions" of the Supreme Court of Puerto Rico are appealable to this court.

■■ The ordinary order appointing a receiver is truly interlocutory, leaving questions of substantive right for future determination. However, the present order does more than that. Appellants in opposing the receivership had claimed that under Act No. 47, properly construed, the option given to the People of Puerto Rico, even assuming its validity, must be exercised in the quo warranto proceedings prior to the final judgment of dissolution; that since confiscation or public auction had not been asked for by the insular government, nor provided for in the final judgment of dissolution, the option had lapsed; that under the provisions of §§ 27–29 of the Private Corporations Law of Puerto Rico (Act No. 30, March 9, 1911, as amended by Act No. 24, April 13, 1916), when a corporation is dissolved in any manner (including forfeiture of its charter), the corporate existence is continued for purposes of liquidation and the directors are made statutory liquidators with full powers to settle the affairs of the corporation and to distribute its property; that such liquidation had been accomplished and the former shareholders had acquired title to the property as partners; that when the mandate of the United States Supreme Court came down, the quo warranto proceedings in the Supreme Court of Puerto Rico terminated and there was nothing further to be done to carry out the judgment of dissolution. But the Supreme Court of Puerto Rico in the order appealed from and in the accompanying opinon has finally determined all these questions of law against appellants' contentions. The court held that "all said acts done after the date of the judgment which ended the legal existence of the defendant corporation are legally void"; and thereby ruled against the validity of the title to the old corporate property acquired by the succeeding partnership. The asserted right of the directors as statutory liquidating trustees to possess and administer the property of the corporation was finally denied. In re Tiffany, 252 U.S. 32, 36, 40 S.Ct. 239, 64 L.Ed. 443. Moreover, the receiver, without further order of court, is authorized to borrow money, and as security therefor to create liens which will take precedence over the property interests of the shareholders. Such an order, in our opinion, is a "final decision" within the meaning of 28 U.S.C.A. § 225. See In re Farmers' Loan & Trust Co., 129 U.S. 206, 9 S.Ct. 265, 32 L.Ed. 656; Texas Co. v. International & G. N. R., 5 Cir., 237 F. 921; Bibber-White Co. v. White River Val. Electric R. Co., 2 Cir., 115 F. 786; Tornanses v. Melsing, 9 Cir., 106 F. 775.

■ A "final decision" is not necessarily the ultimate judgment or decree completely closing up a proceeding. In the course of a proceeding there may be one or more final decisions on particular phases of the litigation, reserving other matters for future determination. See Knox National Farm Loan Ass'n v. Phillips, 300 U.S. 194, 197, 198, 57 S.Ct. 418, 81 L.Ed. 599, 108 A.L.R. 738; Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157; Gay v. Hudson River Electric Power Co., 2 Cir., 184 F. 689; Dant & Russell v. J. D. Halstead Lumber Co., 9 Cir., 103 F.2d 306. The words "final decisions," like the equivalent "final judgments and decrees" in former acts regulating appellate jurisdiction, have not been understood in a strict and technical sense, but have been given a liberal and reasonable construction. Forgay v. Conrad, 6 How. 201, 203, 12 L.Ed. 404; City of Eau Claire v. Payson, 7 Cir., 107 F. 552, 557.

The motion to dismiss for lack of jurisdiction is therefore denied.

Coming then to the merits, we do not find ourselves in full agreement with the contentions of either side.

Appellants urge that there was no occasion to appoint a receiver to preserve the status quo pending election by the People pursuant to the option given in Act No. 47, because the option by its own terms had lapsed, and, if this point is not well

758

taken, because the provision of law conferring the option is invalid.

■ It is said that the option has lapsed, because by its terms the People must exercise it prior to the judgment of dissolution, and this was not done. Section 1 of Act No. 47 provides that "The People of Puerto Rico may, at its option, through the same proceedings, institute in its behalf the confiscation of such property, or the alienation thereof at public auction, within a term of not more than six months counting from the date on which final sentence is rendered." Section 2 provides that "when the decree of nullity affects real property and The People of Puerto Rico has chosen to confiscate it or orders it sold at public auction, the final judgment shall fix the reasonable price to be paid for said property." The contention is that the clause "within a term of not more than six months from the date on which final sentence is rendered" qualifies only the last antecedent clause "or the alienation thereof at public auction"; and therefore that it is the sale that must take place within six months from the date on which final sentence is rendered. The court below, however, reads § 1 as meaning that the People of Puerto Rico have six months after the judgment of dissolution becomes final within which to apply in the quo warranto proceedings for confiscation or sale at public auction; that this judgment did not become final until the mandate of the United States Supreme Court was received by the clerk of the Supreme Court of Puerto Rico, on May 13, 1940, so that the option could be exercised at any time up to November 13, 1940. We think that this is a reasonable, perhaps the more reasonable, interpretation of the act, and this being so, we accept the interpretation of a local statute made by the insular court. Section 2 of Act No. 47 does not necessarily mean, as appellants contend, that there is to be only one final judgment in the course of the quo warranto proceedings. There may be a final "decree of nullity" upon the determination that the corporation has by its acts forfeited its charter; and if, thereafter, the People should elect to have the property sold at public auction there may, in the same proceedings, be a "final judgment" ordering the sale and fixing "the reasonable price to be paid for said property." The quo warranto proceedings were not at an end with the final affirmance by the Supreme Court of the United States of the "decree of nullity." Indeed, the mandate of the Supreme Court of the United States remanded the case to the insular Supreme Court "for further proceedings" which fairly would include any proceedings necessitated by subsequent exercise of the option.

■ The validity of the option provision is assailed mainly on the ground that it is in the nature of an ex post facto penalty forbidden by the Organic Act, 48 U.S.C.A. § 737. At the threshold of the argument it may be plausibly maintained that the provision is not a penalty at all but a remedial measure to undo the concentration of corporate land-holding brought about in violation of the public policy expressed in the Joint Resolution and in the territorial legislation. However this may be, and · assuming, without deciding, that the provision is a penalty, we still do not see that its application here is ex post facto. After Act No. 47 was passed, on August 7, 1935, the corporation continued to hold the forbidden acreage without taking any steps to dispose of the excess lands and without manifesting any intention to do so. Assuming that the corporation would have to be afforded a reasonable time after the passage of the act to dispose of its holdings, before the so-called penalty of sale by public auction could lawfully be imposed, the corporation did have such reasonable time here, and did nothing about it. The original quo warranto complaint was not filed by the People until January 28, 1936. An amended complaint was filed February 26, 1937, to which the corporation made answer August 19, 1937, claiming that the 500-acre restriction did not apply to it and evincing a purpose to persist in holding the 12,000 acres. In view of what the court found to be a continuing violation for so long a time after Act No. 47 was passed, the so-called penalty, if applied in the case at bar, is not ex post facto.

We conclude that after the judgment of dissolution was finally affirmed it was still open to the People to exercise the option, and that the Supreme Court of Puerto Rico had jurisdiction in the continuing quo warranto proceedings to entertain and act on any subsequent application by the People in the exercise of the option within the six months' period.

But the order appointing a receiver was, in our opinion, improvidently issued.

■ "It is perhaps unnecessary to advert to certain well-settled principles governing the appointment of receivers. It

is a drastic remedy, and calls for the exercise of the greatest care and judgment; and this is especially true where it is sought to take not only from the parties themselves the management of their own property, but property in the hands of a trustee." Home Mortgage Co. v. Ramsey, 4 Cir., 49 F.2d 738, 742. See Pomeroy, Equity Jurisprudence (4th ed.) § 1538.

The general statutory scheme contemplates that upon dissolution the directors as liquidating trustees shall proceed to wind up the affairs of the corporation. This is true however the corporation is dissolved, whether by voluntary act, expiration of time, or decree of forfeiture. Sections 27, 28 and 30 of the Private Corporations Law of Puerto Rico are clear and unambiguous on this point. Section 27 continues the corporate existence for purposes of liquidation in the case of "all corporations, whether they expire through the limitation contained in the articles of incorporation or are annulled by the Legislature, or otherwise dissolved." Section 28 provides that "Upon the dissolution in any manner of a corporation, the directors shall be the trustees thereof pending the liquidation, with full power to settle the affairs * * *." See Grey v. Newark Plank Road Co., 65 N.J.L. 603, 48 A. 557; Watts v. Vanderbilt, 2 Cir., 45 F.2d 968, 970; Pomeroy, Equity Jurisprudence, 4th Ed., §§ 1544, 1548. "These trustees, like trustees in general, are, of course, amenable to the jurisdiction of a court of equity, and may be called to account there for any neglect of duty or abuse of power. But, until they are so called to account in an independent action or proceeding by a party in interest, no court has any excuse for interference * * *." Havemeyer v. Superior Court, 84 Cal. 327, 367, 24 P. 121, 129, 10 L.R.A. 627, 18 Am.St. Rep. 192. In this connection § 30 of the Private Corporations Law provides that "When any corporation shall be dissolved in any manner whatever, the district court having jurisdiction of the place where its principal office in the Island of Porto Rico is situated, on application of any creditor or stockholder, may at any time either continue the directors as trustees as aforesaid, or appoint one or more persons to be liquidators of such corporation. * * *" The implication is unmistakable that whatever the mode of dissolution, the directors automatically succeed as liquidating trustees.

■ The court below relied upon § 182, par. 4, of the Code of Civil Procedure. It is there provided that:

"A receiver may be appointed by the court in which an action is pending or has passed to judgment, or by the judge thereof:

" * * *

"4. In the case when a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights."

This does not mean, however, that in case of dissolution, even by forfeiture, a receiver must be appointed as a matter of course. It only preserves to the courts jurisdiction to supplant the statutory trustees upon proper showing by an interested party, agreeably to the usages of courts of equity. Weatherly v. Capital City Water Co., 115 Ala. 156, 171, 172, 22 So. 140, 142. See Havemeyer v. Superior Court, supra.

■ In the case at bar the receiver obviously was not appointed at the instance of, or to protect any imperilled interest of, either creditors or stockholders. See Havemeyer v. Superior Court, 84 Cal. 327, 369, 370, 24 P. 121, 130, 10 L.R.A. 627, 18 Am.St.Rep. 192.

Nor have the People of Puerto Rico a sufficient interest in the premises to justify the court in continuing the operation of the business through a receiver for an indefinite period, when the owners of the corporation after its franchise has been forfeited want to wind up the corporate affairs and promptly proceed to do so.

All that remains to be done, so far as any interest of the People is concerned, is to protect the option given by Act No. 47. This option relates only to the disposition of the excess acreage of land, and has nothing to do with the other assets of the corporation of every kind and description, all of which the receiver is commanded to take into his possession by the order appealed from. The People do not need a receiver to protect the option. If and when the time comes for the court to decree a sale of the land at public auction a master can be appointed to carry through the sale. The land will still be there. Meanwhile, the interest of the People is protected by a lis pendens notice which was entered in the Registry of Property shortly after the institution of the quo warranto proceedings, which notice the

corporation unsuccessfully sought to have cancelled.

We are informed that on August 28, 1940, after the entry of the order appointing a receiver, the Attorney General on behalf of the People of Puerto Rico filed in the court below a motion or petition concluding as follows:

"Therefore, The People of Puerto Rico elects to have all the lands in the possession of the respondent sold at public auction, and prays this Court to order the sale at public auction of the said real property by the receiver already appointed by this Court, after the same is assessed in conformity with the provisions of the Condemnation Proceedings Act now in force."

Appellant contends that Act No. 47, properly construed, confers no authority upon the Attorney General to exercise this option on behalf of the People but requires the election to be made by legislative act. This question we do not pass on now, because the Supreme Court of Puerto Rico has had no occasion to consider it. The point may be presented to that court upon remand of the case.

Further questions of law may arise as to the mechanics of the sale. We shall not anticipate the many problems that may be foreseen as likely to arise in the subsequent proceedings. It will be time enough to consider them if and when an appeal comes to us from an order or decree directing a sale.

The order of the Supreme Court of Puerto Rico is vacated, with costs to the appellants, and the case is remanded to that court for further proceedings not inconsistent with this opinion.