**UNITED STATES of America,**
**Libelant,**

v.

**ONE 1953 OLDSMOBILE SEDAN, Motor**
**No. R376229, Serial No. 539A5536.**

**Civ. A. No. 623.**

United States District Court
W. D. Arkansas, Hot Springs Division.
June 13, 1955.

Charles W. Atkinson, U. S. Atty., Henry M. Britt, Asst. U. S. Atty., Fort Smith, Ark., for libelant.

Richard W. Hobbs, Hot Springs, Ark., for defendant.

JOHN E. MILLER, District Judge.

The libel of information was filed on March 28, 1955, against the above-described automobile and alleged that the automobile was seized on land by investigators, Julian S. Majors and Robert Finley, of the Internal Revenue Service of the United States and that the same was being held by the Internal Revenue Service of the United States at a certain storage place in the City of Hot Springs, Arkansas, the appraised value of the motor vehicle being $1,350.

It was further alleged:

"That for cause of said seizure, said motor vehicle on or about March 15, 1955, was used by James T. Barker in violating the provisions of the Internal Revenue laws of the United States in that said motor vehicle was employed by James T. Barker to aid him in engaging in the business of wagering without having paid the Special Tax imposed under Section 4411 of the 1954 Internal Revenue Code [26 U.S.C.A.] contrary to Section 7302 of the 1954 Internal Revenue Code of the United States."

On April 7, 1955, the alleged owner of the automobile filed his answer in which he admitted that his automobile had been seized by "agents of the Internal Revenue Service of the United States." However, the owner denied that the investigators named in the libel of information were the officers who seized the automobile. All other allegations in the libel of information were denied.

On the same date that the libel of information was filed, the United States Attorney filed an information against the said James T. Barker in Criminal Action No. 555, in which information the said defendant, James T. Barker, was charged in Count I with engaging, on March 15, 1955, in the business of wagering without having paid a Special Tax as required by law, in violation of Section 4411 of the 1954 Internal Revenue Code.

In Count II the defendant was charged with the offense of engaging in the busi-

ness of wagering, on March 15, 1955, without having registered with the District Director of the Internal Revenue at Little Rock, Arkansas, as required by law, in violation of Section 4412 of the 1954 Internal Revenue Code.

To this information the defendant entered a plea of not guilty to both counts and, on the 26th day of April, 1955, the charges contained in the information were tried to a jury. The government introduced five witnesses in support of the allegations contained in the information and the defendant introduced only himself and wife, Mrs. James T. Barker. The jury returned a verdict of not guilty, and the defendant was discharged.

At the conclusion of the trial of the criminal action, the instant case was called for trial. Whereupon, the United States Attorney, representing the libelant, and Mr. Richard W. Hobbs, representing the claimant of the automobile, agreed that the case should be submitted to the court "upon the evidence presented in Criminal Action No. 555." At the time, the United States Attorney suggested that certain evidence taken from the person of the said James T. Barker at the time of his arrest, but which evidence was suppressed at the trial of the criminal case, should be considered by the court. Apparently the suggestion was acceptable to the attorney for the claimant and the court included in the order of submission that such evidence would be considered, along with a statement, to be filed, of the witness who obtained the documentary evidence from the claimant at the time of his arrest.

It was suggested by the court that counsel should file briefs with the court on the question of jurisdiction "or any other question which they might desire to discuss."

The briefs have been filed and considered by the court, along with the testimony that was heard at the trial of the criminal case as aforesaid, and the court, having considered said testimony, together with the arguments and contentions of the attorneys for the respective parties, now makes and files herein its Findings of Fact and Conclusions of Law, separately stated:

## Findings of Fact

### 1.

On March 15, 1955, the claimant of the automobile, James T. Barker, had not paid the tax levied upon persons engaged in receiving wagers for or in behalf of any person. Neither had he registered with the official in charge of the Internal Revenue District in which Hot Springs, Arkansas, is located.

### 2.

William Aronson is the brother-in-law of the claimant, James T. Barker, and lives at 230 Park Terrace in Hot Springs, Arkansas, His telephone number is 7169J. The claimant, Mr. Barker, lives at 210 Park Terrace and his telephone number is 1352. Aronson was engaged in the business of receiving wagers for and on behalf of persons who desired to place wagers with him, and he had paid the Special Tax and registered with the Director of Internal Revenue for the District of Arkansas at Little Rock.

The telephone in the home of the claimant, Mr. Barker, is private. Apparently, every day Mr. Aronson would go to the home of the claimant Barker, and it was generally known by prospective bettors that, if they desired to place a bet with Aronson, they should call telephone number 1352 which, as above stated, was in the home of Mr. Barker, the claimant. In fact, all of the witnesses who testified to having placed wagers with Aronson testified that they would reach him by calling that telephone number. Mr. Aronson stated that he used the claimant's telephone for convenience and that he spent the latter part of the morning and early afternoon of each day at the home of the claimant for the purpose of receiving wagers.

Most wagers were placed upon horse races and, after the race was run and the results known, Mr. Aronson would compile a list of the day's business showing the name of each person who had placed

a wager, the amount of the wager and the result of the race. Aronson did not own a private automobile, but the claimant Barker owned the automobile now in question. Barker was not physically able to drive the automobile with safety. It was necessary for Aronson to keep in contact with the persons who made the wagers and, on the morning following the day the wager was made, he would call upon each one of his customers. If the bettor had won the wager, Aronson would pay according to the terms of the wager and, if the bettor lost, the bettor would in turn pay Aronson the amount of the bet. The automobile in question was used in making calls upon the bettors and Aronson was usually accompanied by the claimant, Mr. Barker. Mrs. Barker customarily drove the automobile because of the physical condition of the claimant Barker.

### 3.

The claimant, James T. Barker, and Charles F. Mahoney, as partners, first registered in May, 1952, and paid the annual Special Tax (levied upon persons who were engaged in receiving wagers for or on behalf of other persons) from that date to January 18, 1955. Prior to January 18, 1955, the claimant Barker withdrew from the partnership, which at that time was operating as a club, and on January 18, 1955, Mahoney applied for a change in the registration from the partnership to himself individually. Thus Barker was not registered on March 15, 1955, and had paid no tax for that period.

Aronson was an employee of the partnership and duly registered from July 1, 1953, to March 1, 1955, as an agent. The last registration of Aronson as an agent covered the period from July 1, 1954, to June 30, 1955. At that time the partnership was doing business at 841½ Central Avenue, Hot Springs, Arkansas, and the registration of Aronson showed that he was registering as an agent of said partnership of Barker and Mahoney.

Subsequent to the withdrawal of Barker from the partnership of Barker and Mahoney, which, as above stated, was operating under a club name, Aronson applied for registration as a principal for the period from March, 1955, to June 30, 1955. The actual application of Aronson for registration as an individual and in his own right is for the period "from March, 1955, to June 30, 1955." The application listed the business address of Aronson as 210 Park Terrace, Hot Springs, and his residence as 230 Park Terrace, Hot Springs. His application showed that he had no employees and was dated March 21, 1955, but apparently the Internal Revenue Service treated the application of Aronson as beginning March 1, 1955.

The claimant Barker was fully advised of his own status. That is, he knew he was not registered as an agent or principal from the date of the dissolution of his partnership on January 18, 1955, and Barker also knew that his brother-in-law Aronson had changed his registration from agent to principal, effective March 1, 1955, to June 30, 1955. It should be remembered that the authority under which Aronson operated up to March, 1955, was under the registration as an agent for the period from July 1, 1954, to June 30, 1955, and when his application for such change was made, the stamp No. 14664 which had been issued to Aronson as an agent was changed and corrected to show Aronson's operation as a principal subsequent to March, 1955.

There can be no doubt that the claimant Barker assisted Aronson in the business that he conducted at Barker's residence, but the government made no contention that Aronson was not duly registered on March 15, 1955.

### 4.

There was no direct *ore tenus testimony* which in itself established that the claimant Barker personally engaged in receiving wagers. However, it is undisputed that the business was conducted from the residence of Barker, over his private telephone, and with the use of his automobile, although it was conducted in the name of Aronson, his brother-in-law.

Moreover, Aronson at intervals furnished the claimant Barker with money to purchase groceries and for other purposes. Barker was not engaged in any other work or occupation and apparently had no income other than such amounts as he received from time to time from his brother-in-law, Aronson. The facts and circumstances convince the Court that the money paid by Aronson to Barker was paid for his assistance in the operation of the business, and that in fact Aronson and Barker were engaged in the business together.

The majority of the customers of Aronson were persons from whom he, as an agent of the partnership, or from whom the partnership itself had accepted wagers, and the customers were familiar with the operations of the business at the time it was operated as a partnership by Barker and Mahoney and while Aronson was registered as an agent of the partnership.

### 5.

The fact that the business was being carried on from the residence of the claimant Barker at 210 Park Terrace and over Barker's telephone was not only well known to the persons who placed wagers but also was known to the Internal Revenue Service and its investigators at the time the libel of information was filed and, as for that matter, at the time the criminal information was filed.

### 6.

As heretofore stated, the claimant Barker was acquitted by a jury of the charges in Criminal Action No. 555.

### Discussion

As heretofore noted, the order of submission of this case stated that certain evidence taken from the person of the claimant, James T. Barker, at the time of his arrest, which evidence was suppressed at the trial of the criminal case, should be considered by the Court in the instant case. At that time no objection was made by claimant to the introduction of said evidence in the instant case, but since then the claimant has objected to said evidence and the Court has concluded that the objection may be well founded. In the trial of the criminal case the Court held that the arrest of the claimant Barker was without a warrant and was illegal, as was the search following the arrest, and for that reason the Court suppressed the evidence which was taken from the person of the claimant as a result of the illegal arrest.

It is true, of course, that in a civil case ordinarily evidence, although illegally obtained, is nevertheless admissible. It is further true that a forfeiture action is essentially a civil case, although having some attributes of a criminal action. But, regardless of these general principles, there is a substantial authority for the proposition that illegally obtained evidence is inadmissible in a forfeiture action. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746; United States v. Physic, 2 Cir., 175 F.2d 338; Vol. 4, Barron & Holtzoff's Federal Practice and Procedure, Sec. 2406. It is unnecessary, however, for the Court to decide this question since the Court is convinced that the evidence, after excluding the illegally obtained evidence, is sufficient to warrant the forfeiture of the automobile.

Claimant contends that his automobile was seized without a warrant, and that under the provisions of Rule 41, Federal Rules of Criminal Procedure, 18 U.S.C.A., the Court should order the automobile returned to him. In making this contention claimant is overlooking the distinction between the seizure of property, the title to which has been forfeited to the United States, and the exclusion of evidence obtained by virtue of an unlawful search and seizure. The distinction is noted in Sanders v. United States, 5 Cir., 201 F.2d 158, at page 159, where the Court said:

"In the one case the government is entitled to the possession of the property; in the other it is not. There is no constitutional objection to the enforcement by the courts of the forfeiture of an offending

article. The Fourth Amendment does not guarantee against seizures in a proceeding such as this, where there is no need of a search and the right to the property has passed to the United States by forfeiture."

See also, United States v. Nobles, D.C.N.J., 109 F.Supp. 8 (holding Rule 41, F.R.Cr.P. inapplicable).

In the instant case the Court excluded the evidence that was illegally obtained by means of an unlawful arrest and search, but the automobile itself was not a part of the evidence and there is no legal barrier to its seizure for the purpose of forfeiture.

■ Claimant's next contention is that it would be inconsistent for the Court to declare a forfeiture in view of claimant's acquittal of the criminal charge by the jury. It is well settled, however, that an acquittal in a criminal action is not res judicata and is not determinative of a subsequent forfeiture action. United States v. Physic, supra; United States v. One 1951 Cadillac Coupe DeVille, Engine No. 516232421, D.C.Pa., 108 F.Supp. 286; United States v. One 1949 Lincoln Coupe Auto., D.C.Mich., 93 F.Supp. 666; Annotation, 27 A.L.R.2d 1137 et seq. Compare, Helvering, Commissioner of Internal Revenue, v. Mitchell, 303 U.S. 391, 397, 58 S.Ct. 630, 82 L.Ed. 917.

■ The reason res judicata is inapplicable is that in the criminal case the Government must prove the defendant guilty beyond a reasonable doubt, while in the forfeiture action the Government need only establish its case by a preponderance of the evidence. See, Vandevander v. United States, 5 Cir., 172 F.2d 100; United States v. Plymouth Coupe etc., D.C.Pa., 88 F.Supp. 93, reversed on other grounds in 3 Cir., 182 F.2d 180; United States v. 673 Cases of Distilled Spirits and Wines, D.C.Minn., 74 F.Supp. 622; Vol. 15, Cyc. of Federal Procedure, 3d Ed., Sec. 88.31. In fact, in narcotics and customs cases the burden is upon the claimant once the Government has established probable cause,

19 U.S.C.A. § 1615; Ted's Motors, Inc., v. United States, 8 Cir., 217 F.2d 777.

■ Thus, the question for determination is whether the automobile is subject to forfeiture under the provisions of Section 7302 of the Internal Revenue Code of 1954. That section provides that no property rights shall exist in any property intended for use in violating the provisions of the internal revenue laws, or which has been so used. The Section further provides that the seizure and forfeiture of any property thereunder "shall be in accordance with existing laws or those hereafter in existence relating to seizures, forfeitures, and disposition of property or proceeds, for violation of the internal revenue laws."

The real question, then, is whether the Government has proved by a preponderance of the evidence that the automobile in question was used in violating the internal revenue laws. If the Government has met its burden, the automobile should be forfeited to the United States. If the Government has failed to meet its burden, the forfeiture should be denied and the automobile should be returned to the claimant.

The particular charge made in the libel of information was that the automobile was used by claimant to aid him in engaging in the business of wagering without having paid the Special Tax imposed under Section 4411 of the 1954 Internal Revenue Code, which provides:

"There shall be imposed a special tax of $50 per year to be paid by each person who is liable for tax under section 4401 or who is engaged in receiving wagers for or on behalf of any person so liable."

Section 4401(c) of the Code provides:

"Each person who is engaged in the business of accepting wagers shall be liable for and shall pay the tax under this subchapter on all wagers placed with him."

■ The Court is convinced that the claimant, James T. Barker, was engaged in the business of accepting wagers and

was using his automobile in that business, without having paid the special tax provided in Section 4411, supra. It is true that the business was carried on in the name of Aronson, but it is likewise true that a substantial part of the business was handled in Barker's home, with the use of Barker's telephone; that Barker's automobile, usually with Barker and his wife accompanying Aronson, was used in making the necessary contacts; and that Barker received money from Aronson in return for his efforts in connection with the business. These facts lead to but one conclusion, and that is that Barker himself was in fact engaged in the business of accepting wagers, along with his brother-in-law, Aronson, and that the automobile in question was thus used in violating the internal revenue laws and should be forfeited to the United States.

With the entry of its decree of forfeiture, this Court has no further jurisdiction of the case and particularly has no jurisdiction to remit or mitigate the forfeiture. See, Section 7327 of the 1954 Internal Revenue Code (making the customs laws relating to remission or mitigation applicable to forfeitures incurred under the internal revenue laws.); 19 U.S.C.A. § 1618 (giving the Secretary of the Treasury jurisdiction over remission and mitigation of forfeitures); United States v. One 1952 Model Ford Sedan Automobile, 5 Cir., 213 F.2d 252, certiorari denied, 348 U.S. 862, 75 S.Ct. 87; United States v. Andrade, 9 Cir., 181 F.2d 42; United States v. Heckinger, 2 Cir., 163 F.2d 472; United States v. One 1941 Plymouth Tudor Sedan, Motor No. P11–214976, 10 Cir., 153 F.2d 19; United States v. One 1951 Cadillac Coupe DeVille, Engine No. 516232421, D.C.Pa., 108 F.Supp. 286; United States v. One 1946 Plymouth Sedan, etc., D.C.N.Y., 73 F.Supp. 88.

In any event, even if the Court had jurisdiction it is clear that claimant would not be entitled to remission or mitigation of the forfeiture.

### Conclusions of Law

#### 1.

The Court has jurisdiction of the parties to and the subject matter of this action.

#### 2.

The automobile in question was used in violation of Section 4411 of the 1954 Internal Revenue Code, and should be declared and adjudged forfeited to the United States.

#### 3.

The Court has no jurisdiction to remit or mitigate the forfeiture.

A judgment in accordance with the foregoing should be entered.