**Anna Valetta NOCITA, Claimant of One 1957 Ford Thunderbird Automobile, Motor No. D7FH116357, its tools and appurtenances, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 15882.**

United States Court of Appeals Ninth Circuit.

Aug. 5, 1958.

Rehearing Denied Sept. 17, 1958.

Walter M. Campbell, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Burton C. Jacobson, Richard A. Lavine, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before HEALY, HAMLEY and HAMLIN, Circuit Judges.

HAMLIN, Circuit Judge.

The United States, appellee herein, filed a libel of information for the forfeiture of a 1957 Thunderbird automobile, alleging that the Thunderbird had been used by Roland Nocita in receiving wagers without filing application for a wagering permit and without payment of a wagering occupational tax in violation

of Sections 4401(c), 4411 and 4412, of Title 26, United States Code.[1] Relying on Section 7302 of Title 26, United States Code, the United States asked forfeiture of the Thunderbird.[2]

Appellant Anna Valetta Nocita, wife of Roland Nocita, answered, denying the allegations of the libel.

The District Court found in favor of the government and ordered the forfeiture of the Thunderbird. This appeal followed and this court has jurisdiction thereof.

On November 24, 1956, Roland Nocita was arrested and the subject automobile was seized and impounded. The evidence by stipulation showed that Anna Nocita at the time of its seizure was the registered owner of the Thunderbird automobile; that Roland, her husband, had her consent to use this automobile; and that prior to November 24, 1956, Roland Nocita was engaged in bookmaking activities but had never filed for a wagering permit under Title 26 Sections 4411 and 4412, United States Code, and had not paid the wagering occupational tax. It also showed that Roland Nocita had pleaded guilty to two counts of an indictment charging him with failure to register for and obtain a wagering permit.

The issues on this appeal as presented by appellant in her brief are (1) Is the use of an automobile for transportation in picking up a sum of money, the product of prior wagers, such a use as to constitute it an instrumentality in the "acceptance of wagers" within the meaning of Sections 4401, 4411, 4412 and 7262, Title 26, United States Code, so as to render the automobile subject to forfeiture pursuant to Section 7302, Title

1. Title 26, United States Code, Section 4401(c).

"§ 4401. Imposition of tax. * * *

"(c) Persons liable for tax. Each person who is engaged in the business of accepting wagers shall be liable for and shall pay the tax under this subchapter on all wagers placed with him. Each person who conducts any wagering pool or lottery shall be liable for and shall pay the tax under this subchapter on all wagers placed in such pool or lottery. Aug. 16, 1954, 9:45 a. m., E.D.T., c. 736, 68A Stat. 525."

Title 26, United States Code, Section 4411.

"§ 4411. Imposition of tax

"There shall be imposed a special tax of $50 per year to be paid by each person who is liable for tax under section 4401 or who is engaged in receiving wagers for or on behalf of any person so liable. Aug. 16, 1954, 9:45 a. m., E.D.T., c. 736, 68A Stat. 527."

Title 26, United States Code, Section 4412.

"§ 4412. Registration

"(a) Requirement.—Each person required to pay a special tax under this subchapter shall register with the official in charge of the internal revenue district—

"(1) his name and place of residence;

"(2) if he is liable for tax under subchapter A, each place of business where the activity which makes him so liable is carried on, and the name and place of residence of each person who is engaged in receiving wagers for him or on his behalf; and

"(3) if he is engaged in receiving wagers for or on behalf of any person liable for tax under subchapter A, the name and place of residence of each such person." * * *

2. Title 26, United States Code, Section 7302.

"§ 7302. Property used in violation of internal revenue laws

"It shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws, or regulations prescribed under such laws, or which has been so used, and no property rights shall exist in any such property. A search warrant may issue as provided in chapter 205 of title 18 of the United States Code and the Federal Rules of Criminal Procedure for the seizure of such property. Nothing in this section shall in any manner limit or affect any criminal or forfeiture provision of the internal revenue laws, or of any other law. The seizure and the forfeiture of any property under the provisions of this section and the disposition of such property subsequent to seizure and forfeiture, or the disposition of the proceeds from the sale of such property, shall be in accordance with existing laws or those hereafter in existence relating to seizures, forfeitures, and disposition of property or proceeds, for violation of the internal revenue laws. Aug. 16, 1954, 9:45 a.m., E.D.T., c. 736, 68A Stat. 867."

26, United States Code? and (2) If the answer to (1) is "yes", then was the forfeited automobile sufficiently identified as being the automobile used in picking up the said money?

A review of the evidence offered by the government (Roland Nocita did not testify) will be helpful. A government Treasury agent testified that he saw Nocita on November 20, 1956, in a 1957 Thunderbird, black with a white top, proceeding south on Long Beach Boulevard in Compton, California; that the car bore a paper license plate #0573243; that he followed the car as far as Rosecrans and Lime Avenue and observed it going down Lime Avenue and turning right on San Vicente in Compton, where it stopped for a moment and then backed out. He next saw Nocita about 6 p. m. on November 24, 1956, on South Central Avenue in Compton while he was in custody of a deputy sheriff. Although Nocita was not then in the automobile, witnesses testified that Nocita obtained the keys to a 1957 Thunderbird from a third party after he said, "I want you to take care of that car, it's mine," pointing to the black and white Thunderbird; and then gave the keys to a witness who searched the Thunderbird, which then was equipped with metal license plates #MVY377. The Thunderbird was black with a white or cream hardtop. The defendant further stated that he owned a 1957 Thunderbird in his wife's name. The Thunderbird was parked across the street from Nocita's place of business. Another government witness checked with the Motor Vehicle Department and found that #MVY377 was the metal plate issued to the paper plate #0573243. Nocita's driver's license was found in the glove compartment of the automobile.

Rudolph Vincelli, a cocktail bar owner, testified that he was an agent for Nocita in the bookmaking business in November. Vincelli testified that he took wagering bets and turned them in to Nocita and got a percentage. He further testified that on one evening in about the second week of November, Nocita came to Vincelli's place of business in a black Thunderbird; that Nocita came to collect some money from Vincelli which was due from wagering. On that occasion, when Nocita left, Vincelli walked to the exit in the rear with him and saw him get into an automobile, and after Vincelli inquired, Nocita told him that it was a Thunderbird. Vincelli observed the color of the car being black, but did not observe whether it had more than one tone, and did not observe whether it had metal or paper license plates. Vincelli testified that when Nocita came to him on that occasion, it was to pick up money he had coming for football bets which Vincelli had made with Nocita for customers of Vincelli. Vincelli had taken his percentage out of the money he paid Nocita. On that occasion Nocita had called Vincelli to let him know that he was coming. The evidence further showed that the Thunderbird was purchased on November 2, 1956, and that when it was seized on November 24 the speedometer showed 1158 miles.

Walter O. Barrett, a bartender, testified that he resided at 14651 South Lime Avenue, near the intersection of San Vicente and Lime Avenue, near where Nocita had been seen in the Thunderbird; that he shared that apartment with Nocita who paid half of the rent therefor and who had a key to the apartment; that he accepted football cards and left them in his apartment with money; he said that Nocita did not live in this apartment, but had a home in Garden Grove, Orange County. A deputy sheriff testified that on November 20 he saw Nocita at the corner of San Vicente and Lime Avenues in the same Thunderbird and that Nocita got out of the car at that time.

Appellant first contends that the Thunderbird automobile in which Nocita was seen by Vincelli may have been used to pick up the winnings from previous wagers, but that it was not used in "the business of accepting wagers" as provided for in Section 4401(c). This is based on Vincelli's testimony which showed that on the date when Nocita visited Vincelli's bar no wagering trans-

action was at that time entered into,— that Nocita's sole purpose in visiting Vincelli's bar was to pick up the winnings from previous wagering contracts. Appellant argues that the illegality of the transaction, namely, the claimant's failure to register under the Code is complete when the wager is made; thus, that a car used in accepting wagers may be forfeited, but that a car used after the illegal event has occurred is not used in furtherance of the violation of Section 4401(c).

Appellant's contentions call for a narrow interpretation of Section 7302 (See footnote 2). Appellant seeks to bring the instant case within the rule established in United States v. Lane Motor Co., 344 U.S. 630, 73 S.Ct. 459, 97 L.Ed. 622, a *per curiam* decision of the Supreme Court in 1953. In the Lane case the claimant's truck was forfeited by the United States. The claimant had used the truck to drive from his home to an illegal distillery where he would park it every day a half mile or more from the distillery. The Court held that a vehicle used solely for commuting to an illegal distillery is not used in violation of the revenue laws.

The answer to appellant's contentions is found in United States v. General Motors Acceptance Corp., 5 Cir., 1956, 239 F.2d 102, 104. In the G.M.A.C. case the claimant also urged that Section 7302 be strictly construed. The case distinguishes the Lane case by saying, "The rule is different, however, when the vehicle is used not merely for the convenience of the operator in commuting, but also as an active aid in violating the revenue laws, even though not for the transportation of any commodity subject to seizure." In speaking of the claimant's contention that Section 7302 be strictly construed, the Court there cited United States v. Ryan, 284 U.S. 167, 52 S.Ct. 65, 67, 76 L.Ed. 224, and quoted from it as follows: "Statutes to prevent fraud on the revenue are construed less narrowly, even though a forfeiture results, than penal statutes and

others involving forfeitures." The G.M. A.C. case reversed a decision of the District Court and forfeited a truck used in violating the wagering tax laws.

The subject Thunderbird clearly was not used by Nocita "solely for commuting" to an illegal business. The Lane case has no application in the instant case.

Forfeitures under Section 7302 are civil in nature. The facts that will justify the forfeiture need be established only by a preponderance of the evidence. United States v. One 1955 Mercury Sedan, 4 Cir., 1957, 242 F.2d 429.

The fact that the subject Thunderbird automobile was not shown to have been used to "accept wagers" but only to collect the winnings of previous wagers does not preclude this court from holding that the car was used as an active aid in violating the internal revenue laws. The receiving of winnings and the paying of losses by a principal are integral parts of the business of accepting wagers. In United States v. One 1953 Oldsmobile, D. C.1955, 132 F.Supp. 14, a similar fact situation was involved. Claimant's automobile there was used to collect proceeds from his bookmaking operation. The bookmaking itself was conducted from the claimant's home, and bets on the horse races were placed over the telephone. The claimant's auto was used by his agent the following day to go from bettor to bettor. If the bettor won, he was paid by the agent at this time; if the bettor lost, the agent collected the winnings. The wagers, however, had been made on the previous day over the telephone. The Court held that the evidence that the car was used in this manner was sufficient to forfeit it under Section 7302.

As to the second claim of the appellant that the automobile seen by Vincelli was not sufficiently identified with the forfeited Thunderbird, we hold that there was ample evidence for the District Court to find that they were one and the same.

We hold that when viewed in its entirety, the evidence is sufficient to show such a use of the automobile as an aid in violating the internal revenue laws as to subject it to forfeiture.

The judgment of the District Court is affirmed.