**UNITED STATES of America,
Plaintiff/Appellee,**

v.

**ONE 1954 ROLLS ROYCE SILVER DAWN, SERIAL NUMBER SNF107, California License 1BT LZ64, its tools and appurtenances, Defendant/Appellant.**

**No. 84–6467.**

United States Court of Appeals,
Ninth Circuit.

Submitted Aug. 14, 1985.[*]

Decided Dec. 3, 1985.

---

[*] The panel unanimously finds this case suitable for decision without oral argument. Fed.R. App.P. 34(a) and Ninth Circuit Rule 3(f).

Jeffrey G. Varga, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff/appellee.

Mark Overland, Overland, Berke, Wesley, Gits, Randolph & Levanas, Los Angeles, Cal., for defendant/appellant.

Before GOODWIN and ANDERSON, Circuit Judges, and KING,** District Judge

J. BLAINE ANDERSON, Circuit Judge:

This appeal involves the forfeiture of a 1954 Rolls Royce automobile that was used in an illegal tax shelter investment. The automobile's owner, Richard I. Chira, contests the forfeiture on the grounds that his vehicle was not used in the tax shelter scheme and that the delay in instituting forfeiture proceedings was unreasonable. The district court ordered forfeiture of the automobile. We affirm.

## I. FACTUAL BACKGROUND

This matter was tried on stipulated facts. The material facts are as follows:

On August 10, 1981, Richard I. Chira ("claimant") and Garrison M. Everett were convicted before the United States District Court for the Central District of California of conspiracy to impair, impede and obstruct the Internal Revenue Service ("IRS") and the Department of Treasury in the collection of taxes, in violation of 18 U.S.C. § 371. This court affirmed. *United States v. Everett*, 692 F.2d 596 (9th Cir.1982), *cert. denied*, 460 U.S. 1051, 1053, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983). Claimant and Everett were found guilty of conspiracy to sell tax shelter investments in 1981 which had been backdated to 1980 for the purpose of allowing a fictitious buyer to claim deductions on his 1980 federal income tax return which could not be legally claimed in that year. One of the tax shelter investments involved in this conspiracy was the automobile.

The arrest of claimant and Everett and their subsequent conviction were precipitated by an undercover IRS investigation. An undercover IRS agent, posing as a representative of a wealthy resident alien looking to shelter 1980 and 1981 income, answered an advertisement in a newspaper offering tax shelter investments, and was referred to a corporation owned by Everett. Everett agreed to generate tax write-offs for 1980.

At various meetings, Everett indicated to the agent that the automobile would generate a $33,000.00 tax write-off for 1980. Everett noted that the advantage of using the automobile in the tax shelter scheme was that it was owned by claimant. As such, transfer of title would not have to be reported, unlike a car dealer who would have to show that title transferred in 1981.

On April 14, 1981, the undercover agent went to Everett's office where he picked up documents relating to the automobile, including a depreciation schedule, a Trust & Fiduciary Agreement, and a Security Agreement, both such agreements being dated December 22, 1980. Later that day, claimant and the undercover agent had a telephone conversation in which claimant indicated that he was aware that the Security Agreement was dated December 22, 1980. Claimant acknowledged that he was aware that the purpose of the Rolls Royce purchase was to generate a tax write-off.

Claimant, Everett, and the undercover agent met at Everett's office on April 16, 1981 to consummate the 1980 tax shelter package. At this meeting, claimant signed the Security Agreement. All of the purchase documents with respect to the automobile were backdated to 1980. Everett stated that the purpose of the transaction with respect to the automobile was to allow the undercover agent's client to take depreciation benefits for the years 1980 and 1981.

Claimant, the principal undercover agent, and another agent then went to an underground public garage to look at the auto-

** The Honorable Samuel P. King, Senior Judge,    District of Hawaii, sitting by designation.

mobile. Thereafter, the three individuals returned to Everett's office where claimant and Everett were arrested. The arresting agents then seized the automobile.

## II. PROCEDURAL BACKGROUND

Following the seizure, the IRS performed various administrative tasks with respect to claimant's automobile. A separate letter and advice of publication of Notice of Seizure were sent to claimant, notifying him of the final claim date of June 12, 1981. A report of seizure was prepared, and on or about May 5, 1981 was forwarded to the Western Regional Office of Chief Counsel, IRS, located in San Francisco. These materials reached the Western Regional Office on or about May 11, 1981. On May 13, 1981, claimant and Mr. Everett were indicted for the above-mentioned violation of 18 U.S.C. § 371.

On June 2, 1981, claimant submitted to the Secretary of the Treasury a Notice of Legal Claim with respect to the automobile and a Petition for Remission of Fine, Penalty or Forfeiture. On June 24, 1981, the District Director acknowledged receipt of claimant's "recent correspondence" and advised that such correspondence was being forwarded to the Assistant Regional Director of the Treasury in San Francisco for appropriate action.

The Treasury Department informed claimant by letter on July 30, 1981 that because the automobile was valued in excess of $2500.00, its forfeiture would be perfected judicially rather than administratively. The letter further indicated that claimant's administrative petition was being processed.

On August 10, 1981, claimant was convicted in district court of a violation of 18 U.S.C. § 371 (conspiracy).

On or about September 2, 1981, the IRS referred the matter to the United States Attorney for the Central District of California. The U.S. Attorney, once satisfied of the appropriateness of instituting a forfeiture action against the automobile, filed the instant complaint for forfeiture on November 24, 1981, seven months and eight days after the automobile was seized. Claimant answered the complaint on March 30, 1982.

On April 6, 1982, claimant's petition for remission was formally denied by the Justice Department. Thereafter, claimant's motion for summary judgment with respect to the time lapse involved in processing the petition for remission and the forfeiture case was granted. On appeal, this court, 722 F.2d 748 (9th Cir.1983), vacated the district court's decision and remanded the case for reconsideration in light of *United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in United States Currency,* 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983).

On remand, based on the stipulation of facts mentioned above, the district court concluded that none of the time lapses involved violated claimant's due process rights and that forfeiture of the automobile pursuant to 26 U.S.C. § 7302 was appropriate because, as the subject of an intended illegal tax fraud, it was used as an active aid in the intended violation of 26 U.S.C. § 7206.

## III. DISCUSSION

### A. Forfeiture under 26 U.S.C. § 7302

■ Claimant contends that the district court erred in finding that the automobile was used as an active aid within the meaning of 26 U.S.C. § 7302. Because such a finding by the district court is a finding of fact, the standard governing appellate review is the clearly erroneous standard. *Anderson v. Bessemer City,* —— U.S. ——, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

■ 26 U.S.C. § 7302 provides in relevant part that "[i]t shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws, ... and no property rights shall exist in any such property." In *United States v. One 1968 Ford Ford LTD,* 425 F.2d 1084, 1085 (5th Cir.1970), the court stated:

The law is clear that all that need be shown to work a forfeiture under § 7302 ... is that the property in question had been intentionally used as an "active aid" in the violation of the internal revenue laws.

There is no question that the automobile was intended to be used as the very object of the fraudulent tax shelter. Thus, the literal words of § 7302 compel forfeiture.

Claimant urges a more narrow interpretation and contends that the automobile should not be considered an "active aid" in this situation. This court, however, has rejected narrow constructions of § 7302. *Nocita v. United States*, 258 F.2d 199 (9th Cir.1958). Indeed, this court, in *Nocita*, 258 F.2d at 202, cited with approval *United States v. Ryan*, 284 U.S. 167, 172, 52 S.Ct. 65, 67, 76 L.Ed. 224 (1931), which stated that "[s]tatutes to prevent fraud on the revenue are construed less narrowly, even though forfeiture results, than penal statutes and others involving forfeiture." The *Nocita* court concluded that because collecting winnings and paying losses are integral parts of the business of accepting wagers, the car in that case was an active aid.

In the case at hand, it is clear that the automobile was an active aid. Indeed, the nexus between the automobile and the intended violation of the internal revenue laws in the instant case is considerably stronger than in the above-cited cases. The automobile was the very object of the fraudulent tax shelter scheme which claimant and Mr. Everett conspired to create. The existence of the automobile and its actual transfer to the fictitious client were central to the intended tax fraud.

The district court determined from the stipulated facts that the automobile, inasmuch as it was the subject of an intended illegal tax fraud, was used as an active aid in the backdating tax shelter scheme. This factual determination, far from being erroneous, is amply supported by the record.

### B. Delay in Instituting the Forfeiture Proceedings

■ Claimant also argues that forfeiture should not have been granted because the seven month, eight day time lapse between seizure of the automobile and commencement of the forfeiture action denied claimant due process of law. The district court decided that claimant's due process was not violated by the delays. This type of decision involves a question of law and is reviewed *de novo*. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, — U.S. —, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). In light of *United States v. Eight Thousand Eight Hundred Fifty Dollars ($8,850) in United States Currency*, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983) ("*8,850*"), claimant's contention must be rejected.

■ In *$8,850*, the Supreme Court held that *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), supplied the appropriate test for determining whether delay in initiating judicial forfeiture proceedings violated due process. 461 U.S. at 564, 103 S.Ct. 2012. *Barker* requires a weighing of four factors: the length of delay, the reason for the delay, the claimant's assertion of his right, and prejudice to the claimant. *Id.* The Supreme Court stated that "none of these factors is a necessary or sufficient condition for finding unreasonable delay. Rather, these elements are guides in balancing the interests of the claimant and the Government to assess whether the basic due process requirement of fairness has been satisfied in a particular case." *Id.* at 565, 103 S.Ct. at 2012–13 (footnote omitted). Applying these factors in *$8,850*, the Supreme Court held that an eighteen-month delay, "quite significant" in itself, did not violate due process. *Id.* Applying these factors to the instant case, claimant was not denied due process of law.

The time lapse between the seizure of the automobile and the filing of the complaint was seven months and eight days. This delay is significantly less than that in *$8,850*. In fact, most cases where the delay was found to be reasonable involved periods of time much longer than the seven-month period in this case. *$8,850*, 461

U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (18 months). *United States v. Two Hundred Ninety-Five Ivory Carvings,* 726 F.2d 529 (9th Cir.1984) (19 months); *United States v. Forty-Seven Thousand Nine Hundred Eighty Dollars ($47,980.00) in Canadian Currency,* 726 F.2d 532 (9th Cir.1984) (14 months); *United States v. Thirteen (13) Machine Guns & One (1) Silencer,* 726 F.2d 535 (9th Cir.1984) (21 months).

Further, the reasons for the delay were legitimate. As stated in the stipulated facts in the district court, there is no precedent with respect to forfeiture of a depreciable asset which is the subject of a tax shelter scheme. The government legitimately needed more time than normal to research, process, and assign this action to the appropriate government agency. The Supreme Court, in *$8,850,* also found that pending criminal proceedings presented similar justification for delay in instituting civil forfeiture proceedings because "[a] prior or contemporaneous civil proceeding could substantially hamper the criminal proceeding...." 461 U.S. at 567, 103 S.Ct. at 2013. Here, as in *$8,850,* the civil complaint was filed approximately three to four months after the claimant was convicted. This time lapse from the completion of the criminal trial to the commencement of this case was not unreasonable.

The third element to be considered in the due process balance is claimant's assertion of the right to a judicial hearing. It does appear that claimant, in the initial stages, attempted to expedite both the administrative and judicial processing of his claim as evidenced by his numerous letters to various governmental agencies. However, the record reveals that he actively avoided service of process from the United States Marshal. In addition, claimant specifically refused to accept delivery of a copy of the Complaint for Forfeiture and other relevant materials. Although claimant asserted his rights soon after the automobile was seized, once the process had begun, he showed little interest in a speedy resolution of his claim.

The final element is whether claimant has been prejudiced by the delay. The primary inquiry is "whether the delay has hampered the claimant in presenting a defense on the merits, through, for example, the loss of witnesses or other important evidence." *Id.* at 569, 103 S.Ct. at 2014–15. The only potential prejudice asserted by claimant is that he has been unable to contact witnesses who could corroborate certain statements made by Everett that claimant was not knowingly involved in Everett's unlawful scheme. Claimant's innocence is irrelevant to this forfeiture proceeding. "It is well settled that in a proceeding for forfeiture against a motor vehicle for violation of the internal revenue laws the innocence of the registered owner-claimant is no defense, as the proceeding is in rem against the vehicle." *United States v. Bride,* 308 F.2d 470, 473 (9th Cir.1962). Thus, the district court correctly ruled that even if claimant had no knowledge of the ultimate illegal use of his automobile, his innocence was no defense to this forfeiture action. As such, claimant has shown no prejudice from the delays.

### CONCLUSION

In this case, it is clear that the automobile was intended for use in violating the internal revenue laws. It was, in fact, the object of the intended tax fraud. As such, the automobile was an active aid and is therefore subject to forfeiture.

The balance of the four *Barker* factors indicates that the government's delay in instituting forfeiture proceedings was reasonable. The seven-month delay was not as significant as in *$8,850* and it was justified by the government's efforts in researching this case of first impression. Claimant did not fully indicate that he desired an early commencement of forfeiture proceedings and he has not shown that the delay prejudiced his ability to defend against the forfeiture. Therefore, claimant was not denied due process of law.

The judgment of the district court is

AFFIRMED.