56 F.3d 1181
 64 USLW 2047
 UNITED STATES of America, Plaintiff-Appellee,
v.
ONE 1986 FORD PICKUP, CA LICENSE NO. 2W03753, VIN
2FTJW36L6GCA99688, Its Tools and Appurtenances, Defendant.
Ernie R. Sanders, Claimant-Appellant.
 No. 93-55367.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 7, 1995.
Decided June 8, 1995.
 
 Richard A. Derevan and Gerda M. Roy, Snell & Wilmer, Irvine, CA, for claimant-appellant.
 Donald D. Clausen, on brief, and John A. Houston, Asst. U.S. Attys., San Diego, CA, for plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of California.
 Before: BROWNING, D.W. NELSON and HAWKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 * A confidential informant told federal law enforcement officials that Claimant-Appellant Ernie Sanders was a large-scale marijuana trafficker who had a Mexican source in Phoenix, Arizona. The informant stated that he and several others had assisted Sanders in distributing two 1000-pound loads of marijuana in New York and New Jersey. The informant also stated that he met with Sanders a few weeks later in Vista, California, and delivered $30,000 to Sanders, which represented profits from the marijuana distribution on the East Coast.
 
 
 2
 The informant reported Sanders drove to and from the Vista meeting in a 1986 blue two-tone Ford pickup. The government seized the truck and filed a forfeiture complaint. Sanders moved to dismiss the complaint and require return of his truck. The government acquiesced in the dismissal, but asked the district court to certify "that there was reasonable cause for the seizure." 28 U.S.C. Sec. 2465.[1]
 
 
 3
 The court dismissed the complaint, ordered the pickup returned to Sanders, and issued a certificate of reasonable cause. The court also ordered Sanders to pay the costs incurred by the government in seizing and storing the truck. Sanders appeals.
 
 II
 
 4
 Sanders contends the court erred in taxing costs against him, because he was the prevailing party. The government agrees, and so do we. By the terms of section 2465, each party must bear its own costs, but the statute does not authorize taxing a prevailing claimant with the cost of seizure and storage. Accordingly, we reverse that portion of the district court's order taxing costs against Sanders.
 
 III
 A.
 
 5
 Sanders challenges the order issuing a certificate of reasonable cause. The government contends we lack appellate jurisdiction because such an order is not a "final decision" within the meaning of 28 U.S.C. Sec. 1291. The government relies on United States v. Abatoir Place, 106 U.S. 160, 1 S.Ct. 169, 27 L.Ed. 128 (1882), which held that an order denying a certificate of reasonable cause was not appealable.[2]
 
 
 6
 When Abatoir Place was decided, the federal courts had long held that many post-judgment orders were not appealable, often on the formalistic ground cited in Abatoir Place--that since the order was not a part of the original final judgment it could not be appealed unless entered in a proceeding framed as a separate action. See 15B Charles A. Wright, et al., Federal Practice and Procedure Sec. 3916, at 360-61 (1992). However, subsequent Supreme Court cases have emphasized that the finality requirement is to be given "a practical rather than a technical construction." Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 375, 101 S.Ct. 669, 674, 66 L.Ed.2d 571 (1981) (quoting Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949)). Under modern doctrine,
 
 
 7
 [a] "final decision" generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.... The foundation of this policy is not in merely technical conceptions of "finality." It is one against piecemeal litigation.
 
 
 8
 Catlin v. United States, 324 U.S. 229, 233-34, 65 S.Ct. 631, 633-34, 89 L.Ed. 911 (1945), quoted in United States v. Washington, 761 F.2d 1404, 1406 (9th Cir.1985).
 
 
 9
 As we have said: "The policy against and the probability of piecemeal review is not as decisive a consideration after judgment as before judgment since the underlying dispute is already settled.... [U]nless such [post-judgment] orders are found final, there is often little prospect that further proceedings will occur to make them final." Washington, 761 F.2d at 1406 (a remedial order issued pursuant to a district court's continuing jurisdiction was appealable; a contrary result "would eliminate any opportunity for review"); see also In re Farmers' Loan & Trust Co., 129 U.S. 206, 213, 9 S.Ct. 265, 265-66, 32 L.Ed. 656 (1889) (order issued subsequent to final decree in foreclosure suit appealable); 15B Wright et al., supra, Sec. 3916 at 351.
 
 
 10
 In light of fundamental changes in final judgment doctrine in the 113 years since Abatoir Place was decided, we conclude the case does not control our decision.[3] To hold that we lack jurisdiction to review an order granting a certificate of reasonable cause would do nothing to advance the policy against piecemeal appeals, but would merely render the district court's decision on these issues permanently unreviewable on the basis of a "technical conception[ ] of 'finality.' " Washington, 761 F.2d at 1406; see also United States v. One 1985 Chevrolet Corvette, 914 F.2d 804, 807 (6th Cir.1990).
 
 B.
 
 11
 We have held that a post-judgment order may be appealable (1) as an "integral part" of the final judgment on the merits even though not entered concurrently with that judgment; (2) as an independent final order in a single case involving two "final" decisions; or (3) as a collateral interlocutory order subject to immediate review under Cohen, if it is viewed as preliminary to a later proceeding. See United States v. Shaibu, 957 F.2d 662, 663-64 (9th Cir.1992) (citations omitted). The order issuing a certificate of reasonable cause in this case is appealable on at least two of these bases.
 
 1.
 
 12
 We held in Shaibu that a sentencing judge's denial of a criminal defendant's motion for a judicial recommendation against deportation was appealable as an "integral part" of the underlying sentencing decision, because (1) only the sentencing judge could make the recommendation, (2) the recommendation was binding on the Attorney General, and (3) the recommendation must be made within 30 days of sentencing. Id. at 664. The same factors support the conclusion that an order issuing a certificate of reasonable cause is appealable as an "integral part" of the judgment in the forfeiture action: (1) only the judge presiding over the forfeiture action may grant the certificate; (2) the certificate is binding upon the parties, barring any future action for damages; and (3) the certificate must be issued soon after entry of judgment, before costs are taxed. Moreover, the inquiry involved in the decision to grant or deny the certificate--i.e., whether the government had probable cause to seize the property and institute forfeiture proceedings--is tied to the merits of the forfeiture action.
 
 2.
 
 13
 To be appealable as a collateral order under Cohen, "the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." Risjord, 449 U.S. at 375, 101 S.Ct. at 674 (quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457-58, 57 L.Ed.2d 351 (1978)). If an order granting a certificate of reasonable cause is viewed as "antecedent and ancillary to another suit," Abatoir Place, 106 U.S. at 162, 1 S.Ct. at 170, it easily meets the Cohen test. The order conclusively resolves the issues of costs and immunity from liability to a future action--issues separate from the merits of any such action. Moreover, the decision to grant a certificate would be effectively unreviewable in a future action, since the certificate itself would bar such an action.
 
 IV
 
 14
 On the merits, the record supported the issuance of the certificate of reasonable cause.[4] "Reasonable cause" within the meaning of section 2465 is essentially synonymous with probable cause. Stacey v. Emery, 97 U.S. 642, 646, 24 L.Ed. 1035 (1878); United States v. 255 Broadway, 9 F.3d 1000, 1006 n. 9 (1st Cir.1993). Thus, whether the certificate of reasonable cause was properly issued depends on whether the government had probable cause to believe the pickup was subject to forfeiture. See United States v. $191,910.00 in U.S. Currency, 16 F.3d 1051, 1071 (9th Cir.1994). We determine de novo whether probable cause existed. Id. at 1071 n. 43.
 
 
 15
 * "Probable cause to believe that the property is involved in some illegal activity is not enough--the government must have probable cause to believe that the property is involved in the activity subject to the specific forfeiture statute it invokes." Id. at 1071. In this case, the government must have had probable cause to believe Sanders's pickup was "used, or ... intended for use, ... to facilitate the ... sale ... of [controlled substances]." 21 U.S.C. Sec. 881(a)(4).
 
 
 16
 Sanders contends his use of the truck to drive to the meeting in California could not have "facilitated" a "sale" of drugs within the meaning of the statute, because the "sale" was complete when the drugs were delivered on the East Coast several weeks earlier. Sanders principally relies on United States v. One 1972 Chevrolet Corvette, 625 F.2d 1026, 1030 (1st Cir.1980), in which the First Circuit held that a vehicle is subject to forfeiture only if it has some "antecedent relationship" to the drug transaction; the use of a vehicle to transport the proceeds after the transaction does not facilitate the prior sale.
 
 
 17
 With all due respect, "[w]e do not understand the temporal distinction." United States v. 1990 Toyota 4Runner, 9 F.3d 651, 654 (7th Cir.1993). Nothing in the language or purpose of section 881(a)(4) suggests a vehicle used to transport a participant to a meeting to receive and carry away the proceeds of an earlier distribution is beyond the reach of the statute.[5] Congress provided for forfeiture of "[a]ll conveyances ... which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [controlled substances]." 21 U.S.C. Sec. 881(a)(4) (emphasis added). "The obvious purpose of the statute read as a whole is to deprive drug traffickers of the principal tools of their trade, which include ... the vehicles, boats, and aircraft that the traffickers use in their business." Toyota 4Runner, 9 F.3d at 653. It would be inconsistent with this broad language and purpose to read into section 881(a)(4) a technical definition of "sale" which viewed the transaction as necessarily complete at the time the drugs changed hands. We therefore decline to establish a per se rule precluding forfeiture when the vehicle's involvement begins only after the drugs are delivered.[6]
 
 
 18
 Instead, the facts of each case must be examined to determine whether, given the totality of the circumstances, there was probable cause to believe the vehicle was used to facilitate the sale of controlled substances. "[T]he federal courts have not employed a uniform test in order to determine the quantity and quality of the acts connected to the property which will subject it to government seizure." United States v. RD1, Box 1, Thompsontown, 952 F.2d 53, 56 (3d Cir.1991). Specifically, this circuit has not decided how close the nexus between the vehicle and drug activity must be to support forfeiture under 21 U.S.C. Sec. 881(a)(4).[7] However, we have held that 21 U.S.C. Sec. 881(a)(6), which provides for forfeiture of money or property furnished in exchange for controlled substances, requires "a showing of 'probable cause for belief that a substantial connection exists between the property to be forfeited and the criminal activity.' " United States v. $5,644,540.00 in U.S. Currency, 799 F.2d 1357, 1363 (9th Cir.1986) (quoting United States v. Four Million, Two Hundred Fifty-Five Thousand, 762 F.2d 895, 903 (11th Cir.1985)). Several other circuits have applied the same standard to forfeiture of vehicles under section 881(a)(4), and no circuit has applied a more demanding one.[8] Applying that standard to this case, we conclude the government had probable cause to believe there was a "substantial connection" between Sanders's use of his pickup and the sale of controlled substances.
 
 
 19
 On the basis of the informant's statement, the government knew the money Sanders received at the California meeting and carried away in his pickup represented proceeds from the earlier distribution of drugs in New York and New Jersey. Distribution of the proceeds of the transaction obviously has a "substantial connection" to the sale of controlled substances--indeed, it is an essential and integral part of that process. See Nocita, 258 F.2d at 202. Therefore, absent some reason to doubt the accuracy of the informant's statement regarding the source of the money, the government clearly had probable cause to believe Sanders's use of the truck had a "substantial connection" to the sale of drugs.
 
 
 20
 Sanders contends the drug deliveries on the East Coast were simply so remote in time and geographic distance from the distribution of the proceeds in California several weeks later that the government could not have had probable cause to believe the pickup was used to facilitate the sale. However, we see no reason why the passage of time and the physical distance from the exchange should distinguish Sanders's case from that of a small-scale drug dealer who trades drugs for money and then uses a vehicle to flee the scene. Cf. 1990 Toyota 4Runner, 9 F.3d at 654. Where, as here, there is direct evidence of a connection between the use of a vehicle and the sale of drugs, it would frustrate the intent of Congress to require a strict temporal or spatial nexus between the vehicle and a particular delivery of drugs changing hands.[9]
 
 
 21
 Although at some point the connection between the seized property and the sale of drugs may be "simply too tenuous and far removed to support its forfeiture," United States v. One 1976 Ford F-150 Pick-up, 769 F.2d 525, 527 (8th Cir.1985) (per curiam), this is not such a case. The informant's testimony that Sanders used his pickup to collect and carry away the proceeds of drug trafficking established a direct link between the pickup and the sale of drugs.
 
 B
 
 22
 The government's seizure warrant was based almost entirely on the statements of the informant. Sanders argues probable cause was lacking because the informant was unreliable and his statements were not corroborated.
 
 
 23
 "The standard of probable cause to support a forfeiture is similar to that required for a search warrant." $191,910.00 in U.S. Currency, 16 F.3d at 1071. Statements of informants may support a finding of probable cause. See United States v. Yarbrough, 852 F.2d 1522, 1533 (9th Cir.1988). "Interlocking" information from multiple informants may enhance the credibility of each. Id. In this case, two informants identified Sanders as a drug trafficker. Only one provided information regarding the use of the pickup, but government agents confirmed the fact that Sanders owned a truck fitting the description given by the informant. The informant's statements regarding the alleged use of the pickup as collateral in drug transactions varied in some respects, but were consistent in the respect material to the forfeiture proceeding: both versions involved the exchange of the pickup for a drug debt. The informant's statement regarding the payoff meeting was based on personal knowledge and was against his penal interest since it involved an admission of complicity in the New York marijuana transaction. Moreover, the informant had provided reliable information in the past. See United States v. Angulo-Lopez, 791 F.2d 1394, 1398 (9th Cir.1986). That he was confused regarding precise details does not outweigh other indicia of reliability.
 
 
 24
 AFFIRMED IN PART, REVERSED IN PART. Each party shall bear its own costs on appeal.
 
 
 
 [1]
 28 U.S.C. Sec. 2465 provides:
 Upon the entry of judgment for the claimant in any proceeding to condemn or forfeit property seized under any Act of Congress, such property shall be returned forthwith to the claimant or his agent; but if it appears that there was reasonable cause for the seizure, the court shall cause a proper certificate thereof to be entered and the claimant shall not, in such case, be entitled to costs, nor shall the person who made the seizure, nor the prosecutor, be liable to suit or judgment on account of such suit or prosecution.
 
 
 [2]
 The Court said:
 [T]he refusal of the District Court to grant a certificate of reasonable cause is not a matter which can be reviewed in the Circuit Court or in this court. It is only from final judgments that a writ of error lies from the District to the Circuit Court....
 The granting or the refusal to grant the certificate is not a final judgment in the sense of the statute which allows writs of error. The certificate, when granted, is no part of the original case. It is a collateral matter which arises after final judgment.
 It is granted to protect the person at whose instance the seizure was made, should an action of trespass be brought against him by the claimant for the wrongful seizure of the latter's property. The granting of the certificate of reasonable cause is, therefore, only antecedent and ancillary to another suit, and is not a final judgment in the case in which it is given.
 106 U.S. at 161-62, 1 S.Ct. at 170.
 
 
 [3]
 Two other circuits have avoided the question by holding that, assuming jurisdiction, there was reasonable cause to support issuance of the certificate. See United States v. 255 Broadway, 9 F.3d 1000, 1006 n. 8 (1st Cir.1993); United States v. Tito Campanella Societa di Navigazione, 217 F.2d 751, 756-57 (4th Cir.1954)
 In United States v. $1,630.00 in U.S. Currency, 922 F.2d 740, 741 (11th Cir.1991), the Eleventh Circuit held the reasoning of Abatoir Place compelled the conclusion that an order granting a certificate is not appealable. The decision has been criticized. See 15B Wright, et al., supra, Sec. 3916, at 359 n. 25 ("The result is surprising. The successful claimant surely has an interest in recovering the costs of the proceeding, and there is no apparent alternative path to appeal."). We agree with this criticism.
 
 
 [4]
 Because the district court dismissed the government's complaint for forfeiture, the facts have not been fully developed. For purposes of this appeal, however, Sanders relies only on the facts alleged in the complaint and in the affidavit and accompanying materials submitted to the magistrate who issued the warrant for seizure of the defendant pickup. Moreover, the district court apparently relied on those facts in denying Sanders's motion for reconsideration on the ground that "[t]he automobile ... that's the subject of this claim was used ... to pick up the money, which were the proceeds from a drug transaction." Because the issue before us is whether the evidence available to the government at the time it instituted forfeiture proceedings gave it probable cause to do so, see United States v. $191,910.00 in U.S. Currency, 16 F.3d 1051, 1071 (9th Cir.1994), we base our decision on those allegations as well
 
 
 [5]
 The First Circuit noted that "[i]n adding subsection 881(a)(6) in 1978, which subjects monies substantially involved in illicit drug transactions to forfeiture, Congress neither included a provision for forfeiture of vehicles transporting such monies nor amended subsection 881(a)(4) to explicitly include such transportation within that provision." 1972 Corvette, 625 F.2d at 1028. The court, recognized, however, that this fact would not preclude forfeiture under section 881(a)(4) if the automobile was used to "facilitate" a drug transaction by transporting drug money. See id
 
 
 [6]
 This interpretation is supported by Nocita v. United States, 258 F.2d 199, 200 (9th Cir.1958), in which we upheld the seizure of an automobile under the authority of a similar statute permitting forfeiture of instrumentalities used in the "acceptance of wagers." The automobile was used to pay the winnings and collect the debts from previous wagers, but never to accept the wagers. In upholding the seizure, we rejected an argument virtually identical to that made by Sanders--"that the illegality of the transaction ... is complete when the wager is made." Id. at 202. We held that "[t]he receiving of winnings and the paying of losses by a principal are integral parts of the business of accepting wagers." Id. Similarly, we conclude that the receipt of the proceeds of drug distribution is an "integral part" of the sale of controlled substances
 
 
 [7]
 Our vehicle forfeiture cases do establish some general rules. It is not necessary that the vehicle actually be used to transport drugs; use of a vehicle to transport purchase money to the site of a drug sale subjects the vehicle to forfeiture. United States v. Linn, 880 F.2d 209, 214 (9th Cir.1989). However, "use of an automobile to commute to the scene of a crime does not justify the seizure of that automobile." Howard v. United States, 423 F.2d 1102, 1104 (9th Cir.1970)
 
 
 [8]
 Cases applying the "substantial connection" standard include United States v. 1966 Beechcraft Aircraft, 777 F.2d 947, 953 (4th Cir.1985); United States v. One 1976 Ford F-150 Pick-Up, 769 F.2d 525, 527 (8th Cir.1985) (per curiam); United States v. 1972 Chevrolet Corvette, 625 F.2d 1026, 1029 (1st Cir.1980). Cases requiring a lesser degree of connection include United States v. 1990 Toyota 4Runner, 9 F.3d 651, 653-54 (7th Cir.1993); United States v. 1964 Beechcraft Baron Aircraft, 691 F.2d 725, 727 (5th Cir.1982) (per curiam)
 
 
 [9]
 "[T]he courts may take into account 'common experience considerations' to acknowledge recognized drug-smuggling practices." $5,644,540.00 in U.S. Currency, 799 F.2d at 1363 (citation omitted). As the Arizona-New York-California scheme involved in the present case illustrates, drug transactions often involve numerous co-conspirators, extend across geographic boundaries, and take place in multiple stages over time. A rigid requirement that the use of the vehicle be close in time or geographic space to a particular delivery of drugs--even in the face of evidence of a direct connection between the vehicle and the sale of drugs--would ignore the complexity and sophistication of such large-scale operations, which often encompass dozens of interrelated individual transactions